1 | Dean P. Sperling
State Bar No. 82936
2 | LAW OFFICE OF DEAN P. SPERLING
114 Pacifica, Suite 250
3 | Irvine, California 92618
(949) 333-6540
4 |
Attorneys for Plaintiffs
5 | Richard Marcus & Elizabeth Marcus



FILED

NOV 1 4 2013

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

**ORIGINAL**

# UNITED STATES BANKRUPTCY COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA, SANTA BARBARA DIVISION

| | |
|---|---|
| In Re: CYNTHIA JOAN MARCUS, | ) Bankruptcy Case No.: 12-BK-12397-RR |
| Debtor | ) |
| _____ | ) CHAPTER 7 |
| RICHARD MARCUS & ELIZABETH MARCUS | ) Adv. Case No.:_____ |
| Plaintiffs | ) COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT |
| vs. | ) |
| CYNTHIA JOAN MARCUS, | ) [11 U.S.C. §523(a)(2)(A), 11 U.S.C. §523(a)(4) and 11 U.S.C. §523(a)(6)] |
| Defendant. | ) |

Plaintiffs herein, Richard Marcus & Elizabeth Marcus ("Plaintiffs") allege as follows:

## GENERAL ALLEGATIONS

### Jurisdiction

1.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334. This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §157(b).

### Plaintiffs' Standing to File Complaint

2.     Defendant, CYNTHIA JOAN MARCUS("Defendant") is the debtor in the above captioned chapter 7 bankruptcy. Plaintiffs are creditors of the Defendant in the amount of at least the principal sum of $39,454.60 and, potentially, the principal sum of $78,909.20, together with interest from and after January 20, 2012 together with Court

costs.  A proof of claim in this case has not been filed inasmuch as Plaintiffs were not listed by the Defendant as creditors in her chapter 7 bankruptcy and, further, said bankruptcy case was deemed to be a no asset case.

### Timeliness of Complaint

3.   The filing of the within Complaint to Determine Dischargeability of Debt is timely in that the Defendant failed to list the Plaintiffs as creditors in Defendant's above chapter 7 bankruptcy case and Plaintiffs had no notice of the existence of said chapter 7 bankruptcy case until October 9, 2013 when their counsel received a letter from Karen L. Grant, Esq., who advised that she was representing the Defendant.  As such, the Plaintiffs did not know about any of the bar dates set in Defendant's chapter 7 bankruptcy action with sufficient notice to file a complaint to determine dischargeability of debt.  Nevertheless, the Plaintiffs, prior to the filing of this Complaint, obtained the consent of the Bankruptcy Court to file said Complaint.

### Underlying Facts

*Date of Death of Decedent*

4.   Harold  Marcus ("Decedent") was the Father of the Plaintiffs and of the Defendant, and passed away on March 9, 1991 in the State of New York.  A true and correct copy of the last will and testament (the "Will") of the Decedent is attached hereto as Exhibit "A" and incorporated herein by reference.   The estate of the Decedent was administered , without the requirement of a pending probate action, and in accordance with New York Law,  in the State of New York for the Decedent entitled <u>In the Matter of the Estate of Harold Marcus</u>, Surrogate Court, Westchester County (the "New York Probate").  Lester J. Tanner, Esq., was the Executor of the New York Probate (the "Executor") as set forth in the Will of the Decedent.   The New York Probate was fully administered in accordance with an agreement between the heirs and distributees a true and correct copy of which is attached hereby as Exhibit "B" and incorporated herein by reference ("Agreement").  Pursuant to the provisions of the Agreement, the residuary beneficiaries of the New York Probate are the three children of the Decedent, Cindy Marcus (the

1  Defendant) and  Richard Marcus and Elizabeth Marcus (the Plaintiffs).

2  *Property Which is Subject of the Petition*

3  5.  The personal property which is the subject of this Complaint is the principal

4  sum of $59,181.97 (the "Funds")  paid to Defendant in its entirety by Crederian Fund

5  Services, Inc. ("Crederian") rather than to the Executor.  As more particularly set forth

6  below, the Executor has now closed his file and no longer is acting as executor of the New

7  York Probate. Defendant was only entitled to her 1/3 of the Funds ($19,727.32) with 1/3

8  each to be paid to Plaintiffs.

9  *Standing of Plaintiffs Under California State Law*

10  6.  Plaintiffs are "interested parties" for filing a petition under <u>California Probate</u>

11  <u>Code</u> §850 within the meaning of <u>California Probate Code</u> §850(a)(2)(D) which states the

12  following in pertinent part:

13  "(a) The following persons may file a petition requesting that the court make
an order under this part:

14

15  (2) The personal representative or **any interested person** in any of
the following cases:

16  (D) Where the decedent died having a claim to real or
**personal property**, title to or **possession of which is held by**
**another.**"

17

18  Plaintiffs are interested persons with respect to their respective 1/3 interest in the

19  Funds.  Defendant, in bad faith, took possession of the entirety of the Funds which were

20  improperly distributed to her by Crederian rather than to the New York Probate executor,

21  Lester J. Tanner, Esq.  Lester J. Tanner, Esq. has closed his file with respect to the New

22  York Probate and is no longer taking any action with respect to this matter.  Further, on

23  August 29, 2013, Judge Colleen K. Sterne of the Santa Barbara Superior Court, in the

24  pending action of <u>In re: Harold Marcus</u>, Santa Barbara Superior Court case number

25  1415417 (the "State Court Action"), made a finding that Plaintiffs were in fact interested

26  persons with standing to pursue the remedies of <u>California Probate Code</u> §850.

27  *Operative Facts*

28  7.  The Plaintiffs and Defendant, due to a letter received by them from an entity

known as Keane, became aware that the State of New York had in its possession certain funds belonging to the Decedent which had not been administered during the administration of the New York Probate. One of such assets was the Funds.[1]

      A.    Attached hereto as Exhibit "C" and incorporated herein by reference is a true and correct copy of an email dated November 9, 2011 to the Executor from Defendant providing the Executor with the information regarding the Funds from an entity known as Keane, who specialized in locating unclaimed property;

      B.    Attached hereto as Exhibit "D" and incorporated herein by reference is a true and correct copy of emails dated November 15, 2011 first from Defendant to Peg Moulder of Crederian (with a cc to the Executor) and from Peg Moulder to Defendant. Said emails demonstrate that both Defendant and Crederian were aware that the Executor was the appropriate person on behalf of the New York Probate to receive any funds due.

      C.    Attached hereto as Exhibit "E" and incorporated herein by reference is a true and correct copy of emails dated November 15, 2012 from the Executor to Peg Moulder of Crederian providing his contact information regarding the Funds and that he will be gathering the needed information to retrieve the Funds and an email dated November 16, 2012 from Peg Moulder of Crederian to the Executor providing her contact information.

      D.    Attached hereto as Exhibit "F" and incorporated herein by reference is a true and correct copy of a letter dated November 16, 2011 from the Executor to Peg Moulder of Crederian (with a copy of Defendant), providing all of the required documents to have the Funds distributed to the New York Probate and, further, instructing the Funds be paid solely to the Executor on behalf of the New York Probate.

      E.    Attached hereto as Exhibit "G" and incorporated herein by reference is a true and correct copy of emails dated November 16, 2011 exchanged between the

---

[1] Keane was an entity who sought out unrecovered assets belonging to persons such as the Plaintiffs and Defendant, offered to obtain them for such persons and then retained a percentage of the recovery. With respect to the Funds, Keane wanted to retain 35% of the Funds.

Executor and Peg Moulder of Crederian. The Executor confirmed the address that the Funds were to be sent in care of.

F.    Attached hereto as Exhibit "H" and incorporated herein by reference is a true and correct copy of a letter dated November 30, 2011 from the Executor to Peg Moulder of Crederian providing a Certificate of Death for the Decedent.

G.    Attached hereto as Exhibit "I" and incorporated herein by reference is a true and correct copy of a letter dated May 24, 2012 from the Executor to Peg Moulder of Crederian inquiring as to the status of the payment of the Funds as it was indicated on January 13, 2012 that the Federal Reserve needed time to finalize the payment.

H.    Attached hereto as Exhibit "J" and incorporated herein by reference is a true and correct copy of an email dated May 24, 2012 from Peg Moulder of Crederian to the Executor advising that the Funds had been wired to Defendant.

I.    Attached hereto as Exhibit "K" and incorporated herein by reference is a true and correct copy of an email dated May 24, 2012 from Defendant to the Executor advising that Defendant received the Funds.

J.    Attached hereto as Exhibit "L" and incorporated herein by reference is a true and correct copy of an email dated May 24, 2012 from the Executor to Defendant asking what happened to the Funds.

K.    Attached hereto as Exhibit "M" and incorporated herein by reference is a true and correct copy of an email dated May 24, 2012 from Defendant to the Executor advising that Defendant received the Funds by wire and her stated reasons for taking same.

L.    Attached hereto as Exhibit "N" and incorporated herein by reference is a true and correct copy of an email dated May 31, 2012 from the Executor to Peg Moulder of Crederian asking for information on the distribution of the Funds to Defendant.

M.    Attached hereto as Exhibit "O" and incorporated herein by reference is a true and correct copy of the emails dated May 31, 2012 first from Peg Moulder of Crederian advising that the Funds were wired to Defendant by Crederian for the "full amount" and that confirmation of receipt of the Funds was made and, second, the email

from the Executor to Peg Moulder of Crederian ask about the "full amount" of the checks and the amount of the wire to Defendant.

N.    Attached hereto as Exhibit "P" and incorporated herein by reference is a true and correct copy of an email dated May 31, 2012 from Peg Moulder of Crederian to the Executor directing the Executor to contact Defendant for further information as Defendant is the authorized individual on the account.

O.    Attached hereto as Exhibit "Q" and incorporated herein by reference is a true and correct copy of a letter dated May 31, 2012 from the Executor to Peg Moulder of Crederian referring back to his November 16, 2011 correspondence whereby she was advised that the Executor was to receive the Funds and asking why the Funds went to Defendant as she was not the authorized individual to receive same. No response to said letter was received.

P.    Attached hereto as Exhibit "R" and incorporated herein by reference is a true and correct copy of a letter dated June 7, 2012 from the Executor to all three residuary beneficiaries, Defendant, Richard Marcus and Elizabeth Marcus concerning the Funds. Said letter recommended a potential settlement concerning the Funds and, further, advised that the Executor was closing his file and no longer proceeding concerning the matter. No response to the said letter has been received from Defendant.

*The Funds Are Required to Be Ordered Turned Over*

8.    California Probate Code §850 provides the following, in pertinent part:

"(a) The following persons may file a petition requesting that the court make an order under this part:

(2) The personal representative **or any interested person** in any of the following cases:

(D) Where the **decedent died having a claim** to real or **personal property**, title to or possession of **which is held by another**.".

As demonstrated by the above recitations and attached exhibits, the Decedent died having a claim to personal property, to wit: the Funds. The Executor attempted to obtain same but Defendant instead inserted herself and without any standing to do so obtained the

entirety of the Funds rather than the Executor.  The Plaintiffs, as interested parties, have

standing under California Probate Code §850 to obtain the relief against the Defendant

provided therein.  The Funds are being "held by another".

*Plaintiffs Are Entitled to Double Damages*

9.    California Probate Code §859 provides the following:

**"If a court finds that a person has in bad faith wrongfully taken,** concealed, or disposed of **property belonging to the estate of a decedent,** conservatee, minor or trust, or has taken, concealed or disposed of the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, **the person shall be liable for twice the value of the property recovered by an action under this part.** The remedy provided in this section shall be in addition to any other remedies available in law to a trustee, guardian or conservator, or personal representative or other successor in interest of a decedent. " [emphasis added]

As set forth above in this Complaint, it is clear that Defendant absolutely knew that

the Executor and the New York Probate were the ones entitled to the Funds.  Defendant

was copied on the written communications between the Executor and Crederian.

Defendant provided the contact information to Crederian with respect to the Executor.

Defendant received the letter of June 7, 2012 from the Executor confirming his right to the

Funds and a suggested resolution which was ignored.  It is not credibly controverted that

Defendant took the Funds in bad faith with the intent to hold them for her sole benefit. The

Plaintiffs, therefore, are entitled to "twice the value of the property recovered" herein.

**FIRST CLAIM FOR RELIEF**

**(Pursuant to Bankruptcy Code §523(a)(2)(A)**

**For Fraud)**

**Reincorporation by Reference**

10.    Plaintiff realleges and incorporates by reference paragraphs 1 through 11 of

this adversary complaint as if set forth in full herein.

**Applicable Bankruptcy Code Section**

11.    Bankruptcy Code Section  §523(a)(2)(A) states the following, in pertinent

part, regarding dischargeability of debts:

- 7 -

"(a)   A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--....

(2) for money, property, services, or an extension , renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.".

12.   Defendant's acts as alleged above in this adversary complaint consist of the obtaining of money by Defendant by way of false pretenses, false representations and actual fraud within the meaning of Bankruptcy Code Section §523(a)(2)(A).   It is further requested that the Court determined the actions of the Defendant to be bad faith within the meaning of California Probate Code §859.

13.   As a result of the actions of Defendant, as above alleged, the Plaintiffs have been injured in at least the principal amount of $39,454.60 and, potentially, the principal sum of $78,909.20, together with interest from and after January 20, 2012 together with Court costs which said amounts are non-dischargeable under Bankruptcy Code §523(a)(2)(A).

## SECOND CLAIM FOR RELIEF

### (Pursuant to Bankruptcy Code §523(a)(4)

### For Embezzlement or Larceny)

### Reincorporation by Reference

14.   Plaintiff realleges and incorporates by reference paragraphs 1 through 11 of this adversary complaint as if set forth in full herein.

### Applicable Bankruptcy Code Section

15.   Bankruptcy Code Section §523(a)(4) states the following, in pertinent part, regarding dischargeability of debts:

"(a)   A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--....

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.".

///

16.    The actions of Defendant, as alleged above in this adversary complaint consisted of embezzlement or larceny. Defendant knew that the Executor was the proper and only authorized person to receive the Funds and, further, that the Executor had made demand for payment of the Funds. Despite the foregoing, however, the Defendant undertook to have the Funds, in their entirety, distributed to the Defendant, and, further, when demand was made to return the Funds, refused to do so.

### The Debt Owing to Plaintiffs is NonDischargeable

17.    The actions of Defendant as alleged herein consist of embezzlement or larceny within the meaning of Bankruptcy Code §523(a)(4).    It is further requested that the Court determined the actions of the Defendant to be bad faith within the meaning of California Probate Code §859.

18.    As a result of the actions of Defendant, as above alleged, the Plaintiffs have been injured in at least the principal amount of $39,454.60 and, potentially, the principal sum of $78,909.20, together with interest from and after January 20, 2012 together with Court costs which said amounts are non-dischargeable under Bankruptcy Code §523(a)(4).

### THIRD CLAIM FOR RELIEF

### (Pursuant to Bankruptcy Code §523(a)(6)

### For Wilful and Malicious Injury)

### Reincorporation by Reference

19.    Plaintiff realleges and incorporates by reference paragraphs 1 through 11 of this adversary complaint as if set forth in full herein.

### Applicable Bankruptcy Code Section

20.    Bankruptcy Code Section §523(a)(6) states the following, in pertinent part, regarding dischargeability of debts:

"(a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--....

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.".

///

### Defendant's Actions Were Willful and Malicious

21.   Defendant's acts as alleged above in this adversary complaint were calculated to willfully and maliciously deprive the Executor, and thus Plaintiffs, of funds to which the Defendant was not entitled and which otherwise would have been distributed to the Plaintiffs.

22.   The actions of Defendant, as alleged above in this adversary complaint were intentional, knowing, and willful.  Defendant knew that the Funds were to be distributed to the Executor, acted to have the Funds distributed solely to the Defendant alone and, when demand was made for repayment, refused instead to do so.

### The Debt Owing to Plaintiffs is NonDischargeable

23.   The actions of Defendant as alleged herein, are willful, malicious, and caused injury to the Plaintiff within the meaning of Bankruptcy Code §523(a)(6).   It is further requested that the Court determined the actions of the Defendant to be bad faith within the meaning of California Probate Code §859.

24.   As a result of the actions of Defendant, as above alleged, the Plaintiffs have been injured in at least the principal amount of $39,454.60 and, potentially, the principal sum of $78,909.20, together with interest from and after January 20, 2012 together with Court costs which said amounts are non-dischargeable under Bankruptcy Code §523(a)(6).

WHEREFORE, Plaintiffs pray that the court determine that:

1.   That the Court determine that the actions of the Defendant to be bad faith within the meaning of California Probate Code §859.

2.   The debt owed by Defendant to Plaintiffs be determined to be in the principal sum of at least $78,909.20 or as shown at the time of trial, and that said sum be deemed non-dischargeable;

3.   That Plaintiffs be allowed their costs incurred herein;

4.   That execution be allowed to issue on such judgment;

///

///

5.      That Plaintiffs have such other and further relief as is just and proper.

Respectfully submitted,

**LAW OFFICE OF DEAN P. SPERLING**

Dated: November 11, 2013          By:

Dean P. Sperling, Attorneys for Plaintiffs,
Richard Marcus & Elizabeth Marcus

R:\Wp8\Marcus, Richard\Cindy Marcus\Bankruptcy\Plead\C Marcus ComplaintDisDebt.wpd

EXHIBIT "A"

I, HAROLD MARCUS, presently residing in the County of Westchester and State of New York, make, publish and declare this to be my Last Will and Testament, hereby revoking all my prior Wills and Codicils.

FIRST:    A.    I give and bequeath to my friend, ELIZABETH ATWOOD METZ, if she shall survive me, the contents of my home at 296 Wilmot Road, New Rochelle, New York, as the same shall be constituted at my death, and the newest one of any automobiles I may own at my death.

B.    I give and bequeath the balance of my tangible personal property, including any such property not hereinbefore effectively disposed of, to such of my children as shall survive me, to be divided approximately equally among them as they shall agree, or if they cannot agree, as my Executor who is not related to me shall decide, the decision of my said Executor to be final and binding.

SECOND:    I give and bequeath FIFTY THOUSAND ($50,000) DOLLARS to the UNIVERSITY OF CHICAGO SCHOOL OF MEDICINE for its general uses and purposes.

THIRD:    A.    If at my death I shall own the real property located at and known as 296 Wilmot Road, in the Town of New Rochelle, County of Westchester and State of New York (the "Wilmot Road Residence"), and if my friend, ELIZABETH ATWOOD METZ shall survive me, I direct that my Executor and Trustees, if ELIZABETH ATWOOD METZ shall so elect in writing within six (6) months of the date my Executor shall qualify and enter into such office, shall permit, so long as ELIZABETH ATWOOD METZ so desires, and so long as she pays all costs (except real estate taxes and debt service on debt existing at my death) thereof, to use said real property exclusively for her own personal residential purposes.

B.    The foregoing notwithstanding, I direct that if the conditions precedent of paragraph A of this Article are satisfied my Executor, and not my friend,

ELIZABETH ATWOOD METZ, shall pay for maintenance, repairs, taxes, homeowners insurance, and debt service on any mortgage encumbering said property, falling due and payable within a year from the date of my death, and shall permit ELIZABETH ATWOOD METZ rent-free occupancy of said property during that time whether or not she elects to have the use thereof for her life; and I give, devise and bequeath said property (whether or not subject to said life use) to my Trustees, IN TRUST, to manage, invest and reinvest the same, to collect the income therefrom, and to pay to or apply for the benefit of my friend, ELIZABETH ATWOOD METZ, all the net income therefrom for her life.  Upon the death of my friend, ELIZABETH ATWOOD METZ, the principal thereof shall be paid over and delivered to my then living issue, per stirpes, subject to the provisions of Article FIFTH of this, my Will, and further provided that where any part thereof shall become payable to any child of mine for whom a trust is then held under Paragraph B of Article FOURTH hereof, such share shall be added to such trust and administered and disposed of as part of the principal thereof.

FOURTH:  All the rest, residue and remainder of my estate, real and personal, wherever situated, including my interest in my Retirement Plan Trust, and any lapsed or ineffective legacies or devises, is herein referred to as my "residuary estate", and shall be disposed of as follows:

A.(1)    If my friend, ELIZABETH ATWOOD METZ, shall survive me, I give, devise, and bequeath to my Trustees one-third (1/3) of my residuary estate IN TRUST, to manage, invest and reinvest the same, to collect the income therefrom and to pay or apply all the net income at least quarter-annually to or for the benefit of ELIZABETH ATWOOD METZ for her life.

A.(2)    Upon the death of ELIZABETH ATWOOD METZ, I direct that the principal thereof shall be

-2-

paid over and delivered to my then living issue, per stirpes,
subject to the provisions of Article FIFTH of this, my Will,
and further provided that where any part thereof shall become
payable to any child of mine for whom a trust is then held
under Paragraph B of Article FIFTH of this, my Will, Paragraph
A.(2), such share shall be added to such trust and adminis-
tered and disposed of as part of the principal thereof.

A(3).    Anything herein to the contrary
notwithstanding, if my friend, ELIZABETH ATWOOD METZ, and I
shall be married at my death, (a) the trusts under Article
THIRD and under paragraph A of this Article FOURTH shall not
be funded with any property or the proceeds of any property
(i) which would not qualify for the marital deduction allow-
able in determining the federal estate tax on my estate, or
(ii) which is includible in my gross estate for federal estate
tax purposes and is also subject by reason of my death to any
estate, inheritance or succession taxes or other death duties
in any foreign country or political subdivision thereof, or
which is deemed to be income in respect of a decedent for the
purposes of the federal income tax, except that the property
described in this clause (ii) may be allocated to the trusts
to the extent that other property of my estate which qualifies
for the marital deduction is not sufficient to fund the trusts
in full; (b) each item of property used to fund those trusts
shall for that purpose be valued at its fair market value at
the date of distribution; (c) my Trustees shall not retain
in either trust beyond a reasonable time any property which
is or shall become unproductive, nor invest in the same,
without the written consent of ELIZABETH ATWOOD METZ; (d) my
Executor is authorized and directed to elect that either or
both such trusts qualify for and be treated as "qualified
terminable interest property" eligible for the federal estate
tax marital deduction; and (e) none of the powers granted to
my Executor and Trustees by this Will shall be exercised in
such a manner as to disqualify either trust or any part there-

-3-

of from the marital deduction allowable in determining the
federal or state tax on my estate.

   B. The balance of my residuary estate
(or, if my friend, ELIZABETH ATWOOD METZ, shall not survive
me, my entire residuary estate) shall be paid out and deliv-
ered to my then living issue, per stirpes, subject to the
provisions of Article FIFTH of this, my Will, and further
provided that each share for a then living child of mine, I
instead give, devise and bequeath to my Trustees, IN TRUST,
to manage, invest and reinvest in a separate trust, to collect
the income therefrom, and to pay or apply to or for the bene-
fit of such child all of the income and so much of the prin-
cipal as they, in their sole discretion, shall deem proper
for his or her maintenance, comfort, education and welfare,
and when such child shall die, to pay and deliver the then
principal together with any accrued but unpaid income to
such person or persons, corporation or corporations, excluding
such child, his or her creditors, estate, or creditors there-
of, in such proportions and in further trust or otherwise,
with the same or other or additional Trustees, and with the
same or another situs, as such child shall appoint by Will
duly admitted to probate and therein expressly referring to
this limited power of appointment.  So much of the then re-
maining principal and accrued but unpaid income as such child
shall not effectively so appoint shall be paid over and deliv-
ered to such of that child's issue as shall survive him or
her, per stirpes, or if none shall then be living, to such
of my issue as shall survive such child, per stirpes, provided
however, that where any part thereof shall become payable to
any child of mine for whom a trust is then held under this
Paragraph B, such share shall be added to such trust and
administered and disposed of as part of the principal thereof.

   C. If any part of my estate or of any trust
established under this, my Will, shall upon the happening of
any contingency not be effectively disposed of, I give, devise

-4-

and bequeath the same to my distributees as determined under the laws of the State of New York in effect at the time of the occurrence of such contingency, as though my death had then occurred in the proportions specified therein.

D. Any net income not required to be and not actually distributed within sixty-five (65) days after the end of the taxable year of any trust hereunder shall be added to and administered and disposed of as a part of the principal thereof.

E. My Trustees are authorized but not directed, in the administration of any trust hereunder for the benefit of my friend, ELIZABETH ATWOOD METZ, so to invest the trust funds as to maximize income, and otherwise so to exercise their discretion as to be consistent with my intention that such trust be administered for the her primary benefit even to the detriment of any remaindermen. I also authorize, but do not direct, my Trustees to distribute to ELIZABETH ATWOOD METZ so much or all or none of the capital gains realized in any trust year as they shall in their sole discretion deem fit.

F. No interest of any beneficiary in or to any trust provided for by Paragraph B of this Article FOURTH of this, my Will, nor any part of such interest, shall in any event be subject to sale, assignment, hypothecation, pledge or transfer by such beneficiary, nor shall the principal of such trust or the income arising therefrom be liable for any debts of any beneficiary or subject to any judgment rendered against any beneficiary or to the process of any court in aid of execution of any judgment so rendered (including any judgment founded on such beneficiary's obligation of support), and all of such income and/or principal shall be transferable, payable and deliverable only to or applicable only for the benefit of the beneficiary designated hereunder at the time or times that he or she is entitled to take the same under the terms of this, my Will.

-5-

FIFTH: A. Anything herein to the contrary notwithstanding, should any amount in excess of Twenty-Five Thousand ($25,000) Dollars pass outright hereunder, other than by reason of discretionary distributions of trust income or trust principal, to any descendant of mine who is under the age of forty (40) years at the time such amount is distributed, such amount shall not pass outright to such person but shall instead be held by my Trustees, IN TRUST, to pay to or apply for the benefit of such person so much or all of the net income therefrom, and so much or all of the principal thereof, as my Trustees in their sole discretion deem fit, accumulating any income not so paid or applied and adding the same to principal at least annually. When such person shall attain the age of forty (40) years or shall sooner die, my Trustees shall pay over and deliver to such person, or to his or her estate, as the case may be, the then principal and accrued, accumulated and undistributed income of such trust. Any net income not required to be and not actually distributed within sixty-five (65) days after the end of the taxable year of any trust under this Article shall be added to and administered and disposed of as a part of the principal thereof. No trust created under this paragraph A of this Article shall extend more than twenty-one (21) years beyond the death of the survivor of the class consisting of ELIZABETH ATWOOD METZ and my issue living at my death, and if such point is reached such trust shall terminate as though the beneficiary thereof had then attained the age of forty (40) years.

B. Anything herein to the contrary notwithstanding, but subject to the provisions of paragraph A of this Article, should any person become entitled to any portion of the income or principal of my estate or of any trust hereunder before attaining the age of twenty-one (21) years, my Executor or Trustees, as the case may be, in their sole discretion, may (a) pay and deliver the same, without bond, (i) to such person

-6-

notwithstanding infancy or minority, if any; (ii) to any cus-
todian for such person, including my Executors or any of my
Trustees, under the Uniform Gifts to Minors Act of any state
(which custodianship shall continue until age twenty-one
(21) if my Executor or Trustees so direct under applicable
state law); (iii) to the guardian of the person or property
of such person, if any; or (iv) to the parent or adult with
whom such person may be residing or such person as my Execu-
tor or Trustees in their sole discretion deem fit; or (b)
hold the same, IN TRUST, to manage, invest and reinvest the
same, to collect the income therefrom, and to pay to or apply
for the benefit of such person so much or all of the net
income and principal thereof as they, in their sole discre-
tion, shall deem proper for the maintenance, comfort, educa-
tion and welfare of such person, accumulating any balance
thereof until such person shall attain the age of twenty-one
(21) years or shall sooner die, and thereupon to pay and
deliver the then principal together with any accrued and
accumulated income to such person, or, if he or she shall
not then be living, to his or her estate. The provisions of
this paragraph B of this Article are expressly made contingent
upon the attainment by such person of the age of twenty-one
(21) years and not upon any status of infancy or minority.

SIXTH:    I direct that all Federal, state or other
estate, transfer, inheritance and succession taxes or duties,
and all interest and penalties thereon (other than any tax
imposed by Section 2601 of the Internal Revenue Code of 1954,
as amended, and other than any state or foreign tax of similar
import, and any interest and penalties thereon), payable by
reason of my death with respect to property passing hereunder
or which shall have passed otherwise than under this, my
Will, shall be paid from my residuary estate passing under
Paragraphs B and C of Article FOURTH of this, my Will, as an
expense of administration and without apportionment, except

-7-

that the bequest under Paragraph A of Article FOURTH in favor of ELIZABETH ATWOOD HETZ shall bear the taxes which would be apportioned to them under section 2-1.8 of the New York Estates, Powers and Trusts Law.

SEVENTH: If any beneficiary under this, my Will, and I, or any prior beneficiary and any subsequent beneficiary of any trust under this, my Will, shall die under circumstances rendering it difficult or impossible to determine the order of death, it shall be presumed that I survived, or that such prior beneficiary survived.

EIGHTH: I appoint my attorney and friend, LESTER J. TANNER, Executor of this, my Will. If LESTER J. TANNER, shall for any reason fail or cease to act as such fiduciary, I appoint MARTIN T. SOSNOFF as his substitute or successor; if he shall for any reason fail or cease to act as such fiduciary, I direct that his substitute or successor shall be such person not related to me by blood as shall be appointed by written instrument duly acknowledged and delivered to such appointee by the last Executor to be serving and to make such appointment (which appointment may be revoked before taking effect) by delivery of a like instrument of revocation to such appointee, or by delivery of an inconsistent like instrument of appointment to some other appointee, and this shall be a continuing power of appointment and revocation to be exercised by the person from time to time entitled to do so, as often as need be.

I appoint my attorney and friend, LESTER J. TANNER, and MARTIN T. SOSNOFF, as Trustees under this, my Will. If either of them shall fail or cease to act, there shall be no necessity for the appointment of a substitute or successor, but if there shall come a time that neither of them is acting, their successor shall be such person not related to me by blood (and not ELIZABETH ATWOOD HETZ) as shall be appointed by written instrument duly acknowledged and delivered to

-8-

such appointee by the last Trustee to be acting (which appointment may be revoked before taking effect to delivery of a like instrument of revocation to such appointee, or by delivery of an inconsistent like instrument of appointment to some other appointee), and this shall be a continuing power of appointment and revocation to be exercised by the person from time to time entitled to do so, as often as need be.

I desire but do not direct that my Executor and Trustees shall use the services of MARTIN T. SOSNOFF in the management of their investments.

I direct that no Executor or Trustee named herein or appointed pursuant hereto shall be required to post bond for the faithful performance of the duties of such office in any jurisdiction whatsoever, any statute, law or rule of court to the contrary notwithstanding, and if bond shall be required despite this direction I direct that no surety shall be required thereon; and they are further absolved from any requirement for the preparation or submission of triennial or other intermediate accounts.

NINTH:    I give to my Executor and Trustees and to their successors, in addition to the authority and power conferred upon them by law, the following powers and discretions:

1. To retain any property forming part of my estate at the time of my death, whether or not the same be such as is permitted by law for the investment of trust funds, and including the stock of any corporation in which they may have an interest by the ownership of stock or by being an officer or director thereof;

2. To invest in any bonds, preferred or common stocks or other investments which they may deem advisable, regardless of whether the same are permitted by law for the investment of trust funds, including any securities of any corporation in which they may have an interest by the ownership of stock or by being an officer or director thereof;

3. To continue as a going concern, for as long as they may deem advisable, any business in which I may be engaged at my death, and to continue to hold the stock, bonds, notes or other evidence

-9-

of ownership or partial ownership thereof as investment, to make additional contributions of capital thereto or to any new corporation, business or venture which to them may seem advisable;

4. To sell at public or private sale any property which I may own or which may become part of my estate, or of any trusts provided for herein, for such price and upon such terms as they shall deem proper, and to grant option for the purchase thereof;

5. To abandon, exchange, mortgage, manage, partition, improve or otherwise, alter any real estate, comprising part of my estate, or of the trusts provided for herein, for such price and upon such terms as they shall deem proper, and to grant options for the purchase thereof;

6. To vote personally or by proxy, and to delegate power and discretion to any such proxy;

7. To exercise subscription, conversion and other rights and options, and to make payments in connection therewith;

8. To continue or renew any loans made by me which may be outstanding at my death and to borrow money for the purposes of paying taxes or administration expenses, or for any other purpose in the administration of my estate, in their absolute discretion, to pay interest thereon at the then prevailing rate, and to mortgage or pledge any property forming part of my estate as security for the repayment of the same;

9. To take any action, and to refrain from taking any action, with respect to any reorganization, consolidation, merger, dissolution, recapitalization, refinancing, and any other plan or change affecting any property held by them, and in connection therewith to delegate their discretionary powers, and to pay any assessments, subscriptions and other charges;

10. To register any property in the name of their nominee or to hold the same unregistered or in such other form that title shall pass by delivery, but without thereby increasing or decreasing their liability as fiduciaries, said fiduciaries assuming full responsibility for the acts of their nominees;

11. To make any division or distribution in cash or in other property, or undivided interests therein, or partly in cash and partly in other property, or undivided interests therein;

12. To hold separate parts or shares of the trust funds provided for herein wholly or partially in solido for convenience of investment and administration;

13. To claim proper deductions from my gross estate for estate tax purposes or from my fiduciaries' gross income for income tax purposes, and to have the federal estate tax on my estate filed on the date of my death or the optional valuation date, values as they may in their discretion elect;

-10-

14. To compromise, settle and adjust, or submit to arbitration or litigate, any claims in favor of or against my estate, or the trusts provided for herein; and

15. To employ such agents, experts, custodians, accountants, bookkeepers and counsel, investment or legal, as they shall consider advisable, to rely on information or advice furnished by them, and to compensate them for their services.

The decision of my Executor and Trustees with respect to the exercise or nonexercise of any discretionary power under this, my Will, or the time or manner of the exercise thereof, made in good faith, shall fully protect them and shall be final, conclusive and binding upon all persons interested therein. My Executor and Trustees acting hereunder shall not be responsible for any error of judgment or mistake of fact or law, and shall be fully protected also for any action taken in good faith in accordance with the advice of counsel, or in reliance thereon. Any Executor or Trustee acting hereunder shall not be responsible for the default or misconduct of any agent or attorney appointed by my Executor or Trustees. Each Executor or Trustee shall be liable only for his or her own willful misconduct or gross negligence. Wherever action is to be taken by my fiduciaries, such action shall be by majority vote of those empowered to act on the matter in question.

TENTH: If I shall die married to ELIZABETH ATWOOD METZ, the provisions of this, my Will, in her favor are in lieu and bar of dower and all other rights including rights of election, in, to or against my estate vested in or conferred upon her by any past, present or future statute of the State of New York, or of any other jurisdiction, or otherwise vested or conferred by law.

ELEVENTH: The words "Executor," "Executors," "Trustee" and "Trustees" and the pronouns therefor as used in this, my Will, shall be construed as masculine, feminine or neuter and in the singular or plural, as the sense requires,

-11-

and to include any and all successors hereunder. The words "child," "children," "issue," and the like, when used in this, my Will, shall not include illegitimate offspring, but shall include persons who shall have been legally adopted before attaining the age of eighteen (18) years, and any issue, whether natural and lawful or legally adopted before attaining the age of eighteen (18) years, of any such persons. The words "per stirpes" when used in this, my Will, shall be strictly construed, continuing the roots of the stocks even through a vacant class.

TWELFTH: In the event any beneficiary under this, my Will, commences, prosecutes, promotes, intervenes in, contributes to or voluntarily participates in, directly or indirectly, or counsels or aids any other person to commence, prosecute, promote, intervene in, contribute to or voluntarily participate in, directly or indirectly, any proceeding or action in any court, agency, tribunal or other forum wherein such beneficiary or counseled person seeks to void, nullify or set aside all or any part of this, my Will, then I direct that without regard to the existence of probable cause for such action, and without regard to the outcome obtained, all expenses (including attorneys' fees) incurred by my fiduciaries and by any other persons in resisting such action shall be paid out of and charged against the property passing to or for the present benefit of such beneficiary hereunder. This provision shall remain in effect from my death until no trust hereunder is in existence, and shall apply to each trust hereunder, whether or not the administration of my estate has been completed. If any provision of this article

is held to be unenforceable or void for any reason, the re-
maining provisions shall be fully effective.

IN WITNESS WHEREOF I have hereunto set my hand and seal
this 22 day of *April*      in the year One Thousand Nine
Hundred and Eighty-Six.

*Harold Marcus*      [L.S.]
Harold Marcus

Signed, sealed, published and
declared by HAROLD MARCUS, the
above-named Testator, as and
for his Last Will and Testament,
in the sight and presence of
each of us, whereupon we, in
the sight and presence of each
other and of the testator, and
at his request, subscribed our
names hereto as attesting wit-
nesses, all on the day and year
last above written.

_____ residing at 121 Law Rd
                            Grairloff, NY 10510

_____ residing at 395 South End Ave.
                            New York, N.Y. 10280

_____ residing at 195 Adams Street
                            Brooklyn, N.Y. 11201

STATE OF NEW YORK )
                  : ss.:
COUNTY OF NEW YORK )

On this 22nd day of April , 1986, personally appeared before me, a notary public in and for the County of Queens , State of New York, SAMUEL J. GILBERT , NORMAN M. ROSENBERG, and ANDERS R. STERNER, who, being severally duly sworn on their respective oaths, did depose and say that they severally witnessed the execution of the within Will of the within named Testator, HAROLD MARCUS, on the 22d day of April , 1986 at the offices of Tanner Gilbert Propp & Sterner, 99 Park Avenue, City, County and State of New York; that said Testator subscribed said Will and acknowledged, published and declared the same to be his Last Will and Testament in their presence; that they, at the request of said Testator and in his sight and presence and in the sight and presence of each other, thereupon witnessed the execution of said Will by said Testator by subscribing their names as witnesses thereto; that said Testator, at the time of the execution of said Will, appeared to be of full age and sound mind and memory, and that they are making this Affidavit at the request of said Testator; all under the supervision of ANDERS R. STERNER, draftsman of the Will and an attorney-at-law.

Severally sworn to and
subscribed before me this
22nd day of April , 1986.

_____
Notary Public

RAY GLANTZ
Notary Public, State of New York
No. 41-5553406
Qualified in Queens County
Commission Expires March 30, 1988.

EXHIBIT "B"

SURROGATE'S COURT
WESTCHESTER COUNTY, NEW YORK
- - - - - - - - - - - - - - - - - - - - - x
In the Matter of the Estate of              :

                                                    COMPROMISE AGREEMENT

        Harold Marcus,                      :

                              Deceased.    :
- - - - - - - - - - - - - - - - - - - - - x

        Harold Marcus (the "Decedent") died a resident of 296
Wilmot Road, New Rochelle, Westchester County, New York on March
9, 1991.  He was survived by his spouse, Elizabeth Atwood-Marcus
(the "Decedent's spouse"), and three children, Richard G. Marcus
("Richard"), Cynthia J. Marcus ("Cynthia") and Elizabeth Marcus
("Elizabeth").

        The Decedent's Last Will and Testament (the "Will"),
dated April 22, 1986 was admitted to probate by the Westchester
County Surrogate's Court on May 3, 1991, on which date Lester J.
Tanner was appointed as Executor (the "Executor") of the estate
(the "Estate") and Lester J. Tanner and Martin T. Sosnoff were
appointed as Trustees (the "Trustees") under the Will.

        Conflicts have arisen between the Decedent's spouse and
children with respect to the proper interpretation of certain
provisions of the Will and of the Harold Marcus, M.D., P.C.
Retirement Plan Trust.

After considerable discussion and negotiation, the parties have agreed to settle their differences on the terms and conditions set forth in this Compromise Agreement.

NOW, THEREFORE, the parties agree, acknowledge, assume and consent as follows:

1.   The Decedent's spouse will be entitled to receive outright all of the Decedent's Retirement Plan Trust and Profit Sharing Plan Trust assets (the "Retirement Plan Assets").

2.   In consideration of the payment to be made pursuant to paragraph 3 below, the Executor will distribute outright to the Decedent's spouse the Decedent's residence (the "Residence") at 296 Wilmot Road, New Rochelle, New York.  The Executor will promptly obtain and deliver to the Decedent's spouse waivers of estate tax liens on the Residence from the Internal Revenue Service and the New York State Department of Taxation and Finance.

3.   At the time of execution of this agreement, the Decedent's spouse will pay to the trusts established for the Decedent's three children under Article FIFTH of the Will (the "Trusts"), in equal shares, the aggregate sum of Fifty Thousand

2

($50,000) Dollars, as consideration for the purchase of their remainder interests in the Residence.

4.    The Estate will not be liable to make any repairs or pay any of the costs of maintaining the Residence incurred after March 9, 1992.  The Executor represents that the amount so paid for repairs, maintenance and mortgage interest and amortization incurred through March 9, 1992 is $45,660.95 and that all bills for that period have been paid.  $8,457.72 was paid thereafter (See Exhibit B) and will be repaid by the Decedent's spouse at the time of execution of this agreement.

5.    (A)  Harold Marcus, M.D., P.C. (the "Company"), the Estate, the Trusts, and the Decedent's children shall jointly and severally indemnify the Decedent's spouse and hold her harmless against any reduction in the amount of Retirement Plan Assets distributable to her pursuant to paragraph 1 to the extent attributable to (i) a reversion of Retirement Plan Trust Assets to the Company to the extent such reversion amount leaves the non-reverting assets of said Retirement Plan Trust below $1,270,000, (ii) any reversion of that portion of the Retirement Plan Trust Assets in excess of $1,270,000, provided that the indemnification under this subsection (ii) shall be reduced by the amount of all income, excise or other taxes, including interest and penalties, imposed on the Company, or its

3

successors, with respect to such reversion amount referred to in this subsection (ii), or (iii) the imposition of any tax liability, including penalties and interest, on the Harold Marcus, M.D., P.C. Retirement Plan Trust or the Harold Marcus, M.D., P.C. Profit Sharing Trust (collectively, the "Retirement Trusts"), with respect to earnings of the Retirement Trusts prior to the date of the Decedent's death, reduced by any reduction in taxes realized by the Decedent's spouse attributable to the payment of taxes (including penalties and interest) on such earnings by the Retirement Trusts (whether by way of credit or deduction).  The indemnity under this paragraph shall include (X) reasonable attorneys' fees and experts' fees in defending against such reduction if (a) none of the Company, the Estate, the Trusts or the Decedent's children undertakes such defense and (b) the Decedent's children do not provide the Decedent's spouse with a written consent or other necessary documentation permitting a reversion that triggers the indemnity under (i) above, and (Y) reasonable attorneys' fees for costs incurred in connection with the collection of this indemnification if not paid promptly after demand.  Notwithstanding any of the foregoing, the Decedent's spouse shall, except as is provided in paragraph 6, be solely responsible for the payment of all income and excise taxes, including penalties and interest, to which she is subject on account of the distribution to her of the Retirement Plan Assets or the payment of any indemnity under this paragraph.  It is the

4

intention of the Company to deduct any such indemnity payment and
report the same as a compensation related payment to the
Decedent's spouse.  The Decedent's spouse agrees to include any
such indemnity payment in her income.

(B)  To secure the Decedent's spouse's right to
indemnity under paragraph (A) above, the Estate agrees not to
liquidate the Company, make distributions from the Company, or
distribute its shares, until the date of approval (the "Approval
Date") by the Internal Revenue Service of the amended and
restated Retirement Trusts, the preparation of which is provided
for in paragraph 8.  The Executor agrees to promptly cause such
amendments to be made and applications for approval filed with
the Internal Revenue Service.  Nothing herein shall restrict the
Trustees in the exercise of their discretion to make
distributions from the Trusts.

(C)  The Executor represents that as of March 31,
1992, the Company's assets include cash of $10,294.02 (as of
April 24, 1992), securities valued at $310,943, and a Reserve
Fund account of $35,047.17 and liabilities known to the Executor
estimated to be approximately $4,000.

6.  If any excise tax is imposed under §4980A(d) of
the Internal Revenue Code of 1986, as amended, with respect to

5

excess retirement accumulations, the Estate shall pay a share of
that excise tax equal to the estate tax savings realized by the
estate by reason of deducting that excise tax for Federal and New
York estate tax purposes, and the Decedent's spouse shall pay the
balance.  The cost of amending the Estate's Federal and New York
estate tax returns with respect thereto shall be borne by the
Decedent's spouse.

7.    The Trusts will receive the Decedent's entire
residuary estate under Article FOURTH of the Will, and the
Decedent's spouse will have no further interest in the residuary
estate, including specifically her right to have a trust
established for her benefit with one-third of the residuary
estate.  The Executor represents that Schedule C is a schedule of
the liquid assets in the residuary estate as it presently exists.

8.    The Decedent's spouse will be responsible for
paying the filing and professional fees incurred in connection
with the amendment and restatement as of January 1, 1989 of the
Retirement Trusts and the IRS filings in connection therewith;
provided, however, that if the amount thereof exceeds Three
Thousand ($3,000) Dollars the Estate and the Decedent's spouse
shall each pay one-half of any balance.

9.   (A)   The Decedent's spouse has received the Profit-Sharing Plan Trust assets and wishes to have the Retirement Plan Trust assets distributed to her in a lump sum in 1993.  The Executor, the Trustees, Richard, Cynthia and Elizabeth agree to execute and deliver promptly any and all waivers and other documents, individually and on behalf of the Company, the Estate, the Trusts and the Retirement Trusts, that may be reasonably required by Decedent's spouse's counsel in connection with the payment to Decedent's spouse of the Retirement Plan Assets.  The parties agree to cooperate (i) to protect the tax exemption and qualification of the Retirement Trusts, (ii) in connection with the restatement of the Retirement Plans to comply with applicable laws, (iii) in terminating the Plans, (iv) in distributing the Retirement Plan Assets, and (v) in the preparation, execution and filing of all required documents relating to the administration, distribution and termination of the Retirement Trusts.  The parties agree to cooperate in defending any claims or litigation relating to the Retirement Trusts and the distribution of the Retirement Plan Assets involving the Internal Revenue Service or other applicable governmental agencies.

(B)   The parties agree to take all actions and to execute and deliver all documents reasonably required to carry out the intention of this Agreement.

7

10.   The parties acknowledge and intend that the Residence and the Retirement Plan Assets should all qualify for the Federal and New York State estate tax marital deductions, and agree not to take any position on any income tax, gift tax or other return, report or affidavit, that would be inconsistent with the manner in which the Residence or the Retirement Plan Assets are reported by the Executor on the Estate's Federal and New York estate tax returns, in conformity with this Agreement.

11.   The Executor agrees to file the Federal and New York estate tax returns reporting the assets referred to in paragraph 10 as qualifying for the marital deduction.  The Residence shall be reported as qualified terminable interest property, for which the appropriate election shall be made.  The Decedent's spouse and her counsel shall have reasonable opportunity prior to the filing of that return to review the manner in which those assets are reported and the marital deduction is claimed.

12.   The Decedent's spouse acknowledges that the Residence will be transferred to her subject to an existing mortgage of approximately Ninety Thousand ($90,000) Dollars.  The Executor represents that that mortgage is the only outstanding lien for money due on the Residence of which they have notice,

8

other than liens for real estate taxes which may have accrued but
are not yet due.  All parties agree to take no action that would
give rise to any such liens.  The Executor shall be responsible
for and shall pay and discharge any and all other liens and
encumbrances against the Residence except any such liens and
encumbrances arising out of the actions of Decedent's spouse
subsequent to March 9, 1991.

13.  The Estate agrees to indemnify the Decedent's
spouse and hold her harmless from any income tax liability,
including interest, penalties and reasonable attorneys fees, for
calendar years 1990 or 1991 arising from an audit of or claim
relating to the Decedent's and the Decedent's spouse's joint
income tax returns, unless and except to the extent any
adjustment (i) results in a greater income tax payable by the
Estate than would have been paid if the Decedent's spouse's
income, expense and loss items were not reported on the return,
and (ii) results from items reportable on the Decedent's spouse's
Schedule C in respect of her business.  Notwithstanding the
foregoing, the indemnity shall be provided only to the extent the
Decedent's spouse promptly notifies the Executor of the
commencement of any audit or inquiry or the receipt of any other
communication from the Federal, state or local tax authorities
with respect to the 1990 or 1991 tax years, and provides the
Estate with the opportunity to control the defense of any such

9

proceeding to the extent relating to a tax for which indemnification is otherwise provided hereunder.

14.   The Executor and the Trustees consent to the settlement herein.

15.   All parties consent to the entry of an appropriate decree in the Surrogate's Court of Westchester County, New York, approving the matters agreed to herein.

16.   (A)   To facilitate this settlement, the Executor, the Company, Richard, Cynthia, Elizabeth and the Decedent's spouse agree and consent to the corporate proceedings referred to in subparagraph 16 (B), including, without limitation, the election of directors and officers and appointment of fiduciaries for the Retirement Trusts, all of which actions have been taken or are being taken simultaneously with the execution and delivery of this Agreement.

(B)   The Company warrants to Decedent's spouse that:

(i)   the Company is duly organized and in good standing under the laws of the State of New York, and has all necessary power and authority, and has taken all corporate

10

action necessary and proper, to enter into and perform this Agreement; the directors and officers of the Company are as set forth in Exhibit A attached hereto and hereby made a part hereof; the President of the Company has all necessary power and authority to execute and deliver this Agreement on behalf of the Company; and this Agreement is valid and binding upon and enforceable against the Company as agreed hereunder; and

(ii)   Lester J. Tanner has been duly appointed as the sole Trustee and Plan Administrator of each of the Retirement Trusts and has all necessary power and authority to perform this Agreement on behalf of each of the Retirement Trusts.

17.   Each party acknowledges that no representations, warranties or agreements of any kind have been made by any person to induce any of the parties hereto to perform this Agreement, except as set forth in this Agreement.

18.   Each party acknowledges and agrees that (i) such party and his or her respective counsel have made such investigation of the facts and law as he or she, or his or her respective independent counsel, has deemed advisable and hereby waives any and all rights to further investigation, (ii) such party has had the independent advice of counsel of his or her own

11

choosing respecting the rights and obligations of the parties

hereunder and their rights and obligations in the absence of this

Agreement, (iii) each party agrees that this Agreement and the

settlement hereunder is a fair and just compromise of the claims

of Richard, Cynthia, Elizabeth and Decedent's spouse, and (iv)

this Agreement shall be binding upon the parties notwithstanding

any known or unknown circumstance of any kind or any change of

circumstances.

19.   The covenants herein with respect to the

settlement of Decedent's spouse's claims against the Retirement

Trusts and the Estate are dependent covenants.

20.   This Agreement contains the entire understanding

of the parties and may not be modified, waived or terminated,

except in writing signed by the party to be charged.

21.   This Agreement may be executed in two or more

counterparts, each of which shall be deemed an original, and by

the several parties hereto in separate counterparts, but all of

which together shall constitute one and the same instrument.

22.   The provisions of this Compromise Agreement shall

be binding upon and inure to the benefit of the parties hereto

and their respective successors, assigns and legal representa-

12

tives.   Richard, Cynthia and Elizabeth jointly and severally
agree to indemnify the Decedent's spouse and hold her harmless
against any claims at any time made by the issue or appointees of
any of them.

        23.   Richard, Cynthia and Elizabeth (including with
Richard, his Trust, including with Cynthia, her Trust and
including with Elizabeth, her Trust) agree that, among
themselves, their liability with respect to their indemnities
under this Agreement shall be one-third each, that if any of them
(and/or his or her Trust) shall have paid more than another on
account of any indemnity under this Agreement, she or he (and/or
his or her Trust) shall be entitled to collect from the other(s)
an amount or amounts such that they shall each have paid the same
amount.

        IN WITNESS WHEREOF, the parties have executed this
Agreement as of the day and year first above written.


                         _____
                         Elizabeth Atwood-Marcus


                         _____
                         Richard G. Marcus


                         _____
                         Cynthia J. Marcus



                              13

_____

Elizabeth Marcus


_____

Lester J. Tanner, Executor of and
Trustee under the Will of Harold
Marcus


_____

Martin T. Sosnoff, Trustee under
the Will of Harold Marcus

HAROLD MARCUS, M.D., P.C.


By: _____
    Lester J. Tanner, President

14

## EXHIBIT A

I.    <u>Officers of Harold Marcus, M.D., P.C.</u>

Lester J. Tanner, President and Secretary

II.    <u>Sole Director of Harold Marcus, M.D., P.C.</u>

Lester J. Tanner

EXHIBIT B

Amounts paid post-March 9, 1992 and due to the Estate
by the Decedent's spouse:

Date Paid

| 3/03/92 | School District Taxes 113/182 x $4,268 | | $2,650.00 |
| 4/1/92 | Marine Midland Bank Principal Interest 22/31 x $691 | $451 490 | 941.00 |
| 5/1/92 | Marine Midland Bank | | 1,142.02 |
| Various medical bills | | | 3,724.70 |
| | | | $8,457.72 |

16

EXHIBIT C

Existing Liquid Estate Assets

| | |
|---|---|
| Chemical Bank checking account | $115,540* |
| Gabelli - Prudential Bank U.S.<br>  Treasury M/M Fund (3/31) | 363,966 |
| Harold Marcus, M.D., P.C.<br>  Sanford Bernstein Account 3/31<br>  The Reserve Fund 3/31<br>  Chemical Bank Checking 4/24 | 310,943<br>35,047<br>10,294 |
| | $835,790 |

---

\*    Subject to $50,000 bequest due to University of Chicago.

17

STATE OF NEW YORK          )
                           :  ss.
COUNTY OF WESTCHESTER      )

      On May __, 1992, before me personally came ELIZABETH ATWOOD-MARCUS, to me known and known to me to be the individual described in and who executed the foregoing instrument, and she duly acknowledged to me that she executed the same.

_____
Notary Public


STATE OF CALIFORNIA        )
                           :  ss.
COUNTY OF SACRAMENTO       )

      On May __, 1992, before me personally came RICHARD G. MARCUS, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

_____
Notary Public


STATE OF TEXAS             )
                           :  ss.
COUNTY OF TRAVIS           )

      On May __, 1992, before me personally came CYNTHIA J. MARCUS, to me known and known to me to be the individual described in and who executed the foregoing instrument, and she duly acknowledged to me that she executed the same.

_____
Notary Public


STATE OF COLORADO          )
                           :  ss.
COUNTY OF DENVER           )

      On May __, 1992, before me personally came ELIZABETH MARCUS, to me known and known to me to be the individual described in and who executed the foregoing instrument, and she duly acknowledged to me that she executed the same.

_____
Notary Public


18

```
STATE OF NEW YORK        )
                         :  ss.
COUNTY OF NEW YORK       )
```

On May __, 1992, before me personally came LESTER J. TANNER, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same as Executor and Trustee, as aforesaid.

Notary Public _____

```
STATE OF NEW YORK        )
                         :  ss.
COUNTY OF NEW YORK       )
```

On May __, 1992, before me personally came MARTIN T. SOSNOFF, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same as Trustee, as aforesaid.

Notary Public _____

```
STATE OF NEW YORK    )
                     :  ss:
COUNTY OF NEW YORK   )
```

On May __, 1992, before me personally came LESTER J. TANNER, to me known, who duly swore to the foregoing instrument and who did say that he resides at 860 Fifth Avenue, New York, New York, and that he is President and Secretary of HAROLD MARCUS, M.D., P.C., the corporation described in and which executed such instrument; and that he signed his name thereto by order of the Board of Directors thereof.

Notary Public _____

19

SCHEDULE A - STATEMENT OF PRINCIPAL RECEIVED
Estate of Harold Marcus
As of 3/23/94

Page

| Assets Listed in Inventory<br>(Valued as of date of death) | | Fiduciary<br>Acquisition<br>Value |
|---|---|---|
| **Checking Accounts** | | |
| Personal Checking account maintained at<br>Chemical Bank, Account # 020-248911. | $  1,104.23 | |
| Dreyfus Worldwide Fund Account #<br>762-0400569257 | 53,841.26 | |
| | | $ 54,945.49 |
| **Savings Accounts** | | |
| Chemical Bank Super Savings Account #<br>250-227126 | $ 70,269.72 | |
| Gabelli & Company, Inc. is a Securities<br>Account in which dividends are reinvested<br>into the account.   Account # AWD 020313-06. | 150.50 | |
| | | 70,420.22 |
| **Money Market Accounts** | | |
| Alger Money Market Account # 400003570-0007 | $ 31,478.21 | |
| Prudential Bache Government Securities Trust<br>US Treasury Money Market Series, held in<br>Gabelli & Company, Inc. Account #<br>AWD-020-313-06. | 151,833.00 | |
| | | 183,311.21 |
| **Common Stocks** | | |
| John Fluke Manufacturing Co.<br>12 Units | $    222.00 | |
| Transportation Capital Corp.<br>1,620 Units | 810.00 | |
| Century Telephone Enterprises, Inc.<br>Held in the Gabelli & Company, Inc., Account<br># AWD01987106.<br>500 Units | 4,953.13 | |

SCHEDULE A - STATEMENT OF PRINCIPAL RECEIVED
Estate of Harold Marcus
As of 3/23/94

|  | Fiduciary Acquisition Value |
|---|---|
| Assets Listed in Inventory (Valued as of date of death) | |
| | |
| T. Rowe Price, Inc., Worchester, MA. Account # 4009481362-9; 3,906.614 shares of no-load mutual fund with a net asset of $13.25/share. 3,906.614 Units | $ 51,762.64 |
| Chris Craft Industries Held in Gabelli & Company, Inc., Account # AWD01987106. 714 Units | 22,022.44 |
| Coca Cola Enterprises Incorporated Held in Gabelli & Company, Inc. Account # AWD01987106. 500 Units | 8,656.25 |
| De Soto Incorporated Held in Gabelli & Company, Inc., Account # AWD01987106. 1,000 Units | 9,406.25 |
| Echlin Incorporated Held in Gabelli & Company, Inc., Account # AWD01987106. 500 Units | 6,312.50 |
| Elcor Corporation Held in Gabelli & Company, Inc., Account # AWD01987106. 1,500 Units | 9,562.50 |
| Ferro Corporation Held in Gabelli & Company, Inc., Account # AWD01987106. 700 Units | 17,259.38 |
| GTE Corporation Held in Gabelli & Company, Inc., Account # AWD01987106. 254 Units | 8,056.56 |
| Gencorp Incorporated Held in Gabelli & Company, Inc., Account # AWD01987106. 1,000 Units | 8,843.75 |

SCHEDULE A - STATEMENT OF PRINCIPAL RECEIVED
Estate of Harold Marcus
As of 3/23/94

Page

| Assets Listed in Inventory (Valued as of date of death) | Fiduciary Acquisition Value |
|---|---|
| General Cinema Corporation Held in Gabelli & Company, Inc., Account # AWD01987106. 300 Units | $ 7,134.37 |
| GEO International Corporation Held in Gabelli & Company, Inc., Account # AWD1987106. 2,000 Units | 3,625.00 |
| Graphic Scanning Corporation Held in Gabelli & Company, Inc., Account # AWD01987106. 2,000 Units | 9,437.50 |
| Grief Brothers Corporation Clas Delaware Held in Gabelli & Company, Inc., Account # AWD01987106. 400 Units | 13,400.00 |
| Idex Corporation Held in Gabelli & Company, Inc., Account # AWD01987106. 1,000 Units | 17,156.25 |
| Johnson Controls Incorporated Held in Gabelli & Company, Inc., Account # AWD01987106. 200 Units | 5,706.25 |
| Kaneb Services Incorporated Held in Gabelli & Company, Inc., Account # AWD01987106. 1,000 Units | 5,593.75 |
| Kollmorgen Corporation Held in Gabelli & Company, Inc., Account # AWD01987106. 1,000 Units | 11,781.25 |
| Kroger Company Held in Gabelli & Company, Inc., Account # AWD01987106. 500 Units | 11,031.25 |

SCHEDULE A - STATEMENT OF PRINCIPAL RECEIVED
Estate of Harold Marcus
As of 3/23/94

| Assets Listed in Inventory<br>(Valued as of date of death) | Fiduciary<br>Acquisition<br>Value |
|---|---|
| Liberty Corporation South Carolina<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  200 Units | $ 8,575.00 |
| Lin Broadcasting Corporation<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  400 Units | 26,275.00 |
| Manitowoc Company Incorporated<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  300 Units | 7,668.75 |
| Media General Inc., Class A<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  500 Units | 10,750.00 |
| Neiman-Marcus Group Incorporated<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  400 Units | 6,512.50 |
| Paramount Communications Incorporated<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  700 Units | 29,728.13 |
| Pinelands Incorporated<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  400 Units | 6,025.00 |
| RPC Energy Services Incorporated<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  1,000 Units | 12,406.25 |
| Rochester Telephone Corporation<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  200 Units | 5,718.75 |

SCHEDULE A – STATEMENT OF PRINCIPAL RECEIVED          Page 5
Estate of Harold Marcus
As of 3/23/94

|  | Fiduciary Acquisition Value |
|---|---|
| **Assets Listed in Inventory**<br>**(Valued as of date of death)** | |
| Scotsman Industries Incorporated<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  2,000 Units | $ 17,562.50 |
| Telephone and Data System<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  500 Units | 17,418.75 |
| Triad Systems Corporation<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  2,000 Units | 6,437.50 |
| United Artists Entertainment Company, Class B<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  500 Units | 6,718.75 |
| United Telecommunications Incorporated Kansas<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  800 Units | 19,400.00 |
| Viacom Incorporated<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  1,000 Units | 24,187.50 |
| Western Publishing Group Incorporated<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  1,000 Units | 12,687.50 |
| Whitman Corporation<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  300 Units | 7,134.37 |
| Affiliated Publications Incorporated New,<br>Series A Common.<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br>  1,500 Units | 14,859.38 |

SCHEDULE A – STATEMENT OF PRINCIPAL RECEIVED
Estate of Harold Marcus
As of 3/23/94

Page (

| Assets Listed in Inventory<br>(Valued as of date of death) | Fiduciary<br>Acquisition<br>Value |
|---|---|
| Ampco Pittsburg Corporation<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br> 200 Units | $  1,593.75 |
| BHC Communications Incorporated, Class A<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br> 200 Units | 10,856.25 |
| C Tec Corporation, Class B<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br> 400 Units | 6,750.00 |
| Centel Corporation<br>Held in Gabelli & Company, Inc., Account #<br>AWD01987106.<br> 500 Units | 16,750.00 |
| American Express Company<br>Held in Gabelli & Company, Inc.<br>Account # AWD-020313-06.<br> 500 Units | 13,250.00 |
| Pet Incorporated New<br>Held in Gabelli & Company, Inc.<br>Account # AWD-020313-06.<br> 300 Units | 5,625.00 |
| Pittway Corporation Delaware<br>Held in Gabelli & Company, Inc.<br>Account # AWD-202-313-06.<br> 400 Units | 13,800.00 |

$541,423.65

Closely Held Corporations

Harold Marcus, M.D., P.C. is a professional
corporation not publicly traded.  Decedent
was sole employee of the corporation.  The
Corporation had no continuing going concern
value after his death.
Three Accounts maintained in the name of

SCHEDULE A – STATEMENT OF PRINCIPAL RECEIVED                    Pag

SCHEDULE A – STATEMENT OF PRINCIPAL RECEIVED                    Page 7
Estate of Harold Marcus
As of 3/23/94

| Assets Listed in Inventory<br>(Valued as of date of death) | | Fiduciary<br>Acquisition<br>Value |
|---|---|---|
| Harold Marcus, M.D., P.C.:  (1) Sanford C. Bernstein, Account # 029-2026; (2) The Reserve Fund, Account # 113-95-052; (3) Chemical Bank, Account # 020-073690; and (4) Accounts Receivables.<br>100 Units | $325,942.20 | |
| 0.294778% Limited Partnership interest in Manhattan Assoc. Limited Partnership, 14 East 60th Street, NY, NY | 825.00 | |
| Investment in undeveloped land in Arizona | 1,000.00 | |
| 10% Interest in Palmer Associates (New Rochelle Racquet Club) | 102,000.00 | |
| 0.577% Partnership Interest in Beechmont Investment Co., C/O Weissman Management Co., 225 Westchester Avenue, Portchester, NY | 3,000.00 | |
| | | $432,767.20 |
| **Other Real Property** | | |
| 50% Tenancy in Common Interest in apartment at 9 East 96th Street. | $138,125.00 | |
| Interest in Rent–Controlled apartments at 270 Fort Washington Place. | 60,000.00 | |
| Remainder interest in property at 296 Wilmot Road, purchased by Elizabeth Atwood-Marcus on 6/3/93. | 50,000.00 | |
| | | 248,125.00 |
| **Refunds** | | |
| Frenkel & Co. | $      867.05 | |
| Professional Risk Management Servic | 80.39 | |
| MONY – Mutual Life | 180.00 | |
| Health Care Insurance Trust | 180.00 | |

SCHEDULE A – STATEMENT OF PRINCIPAL RECEIVED                    Pag

SCHEDULE A – STATEMENT OF PRINCIPAL RECEIVED
Estate of Harold Marcus
As of 3/23/94

Page 8

| Assets Listed in Inventory<br>(Valued as of date of death) | | Fiduciary<br>Acquisition<br>Value |
|---|---|---|
| Mutual of Omaha | 716.93 | |
| Medicare Reimbursement | $   29.20 | |
| Blue Cross/Blue Shield reimbursement | 74.44 | |
| Refund for NYS Tax overpayment for Calendar year 1990. | 13,659.00 | |
| American Express Traveler's checks found in decedent's name. | 1,700.00 | |
| USAA Subscribers Savings – Account Payout. | 416.51 | |
| American Psychiatric Association Refund. | 137.48 | |
| Veteran Refund issued by City of New Rochelle. | 200.89 | |
| New York State Income Tax Refund for HM and EAM for 1991. | 14,272.90 | |
| Puff back reimbursement check from Marine Midland Bank. | 9,746.26 | |
| Expenses reimbursed by Elizabeth Atwood-Marcus. | 40,704.05 | |
| Medicare reimbursement in 2 checks in the amount of $91.36 and $88.64. | 180.00 | |
| Medicare Reimbursement check. | 91.18 | |
| USAA Safety Rebate for devises in automobile. | 14.36 | |
| | | $ 83,250.64 |

Miscellaneous Property

| Cohmad Securities Corp. Account # 8 (377) | $185,756.13 |
| Metropolitan Life Insurance Policy with Estate as beneficiary. | 11,511.36 |

SCHEDULE A – STATEMENT OF PRINCIPAL RECEIVED
Estate of Harold Marcus
As of 3/23/94

Page 9

| Assets Listed in Inventory (Valued as of date of death) | | Fiduciary Acquisition Value |
|---|---|---|
| Gabelli Growth Fund - IRA payable to the Estate. | $  3,055.76 | |
| | | $200,323.25 |
| TOTAL INVENTORY | | $1,814,566.66 |

EXHIBIT "C"

**Lester J. Tanner**

| | |
|---|---|
| From: | Cindy Marcus [cindymarcus7@gmail.com] |
| Sent: | Wednesday, November 09, 2011 4:50 PM |
| To: | Les Tanner; Lester J. Tanner |
| Subject: | Fwd: Your web site |

Les,

I just got this e-mail from Debbie Zumoff at Keane.

Cindy

---------- Forwarded message ----------
From: Debbie Zumoff <dzumoff@keaneup.com>
Date: Wed, Nov 9, 2011 at 12:47 PM
Subject: RE: Your web site
To: Cindy Marcus <cindymarcus7@gmail.com>

Ms. Marcus:

I have been researching your father's account since we spoke yesterday evening.  Once I obtain a few final answers to my questions, I will be in touch with you.  I'm cautiously optimistic that the funds will be available for you to claim directly; I just need to nail down the current holder of the funds and the process required for the claim.

Debbie L. Zumoff
Chief Compliance Officer

P. 1.800.848.8896 ext.3004  D. 610-232-0704  C. 215.470.0285 F. 610.232.0798 E. dzumoff@keaneUP.com
1400 Liberty Ridge Drive • Suite 201 • Wayne, PA  19087 www.KeaneUP.com


Important note: On December 14, 2010 Venio, LLC and The Keane Organization joined forces to become the clear leader in the unclaimed property industry.  The combined company, now operating under the name Keane, provides unmatched communication, consulting and compliance services ℞ Please consider the environment before printing this email



-----Original Message-----
From: Cindy Marcus [mailto:cindymarcus7@gmail.com]
Sent: Tuesday, November 08, 2011 4:54 PM
To: Debbie Zumoff
Subject: Your web site

I have been reading your web site and found this statement on it, "Here at Keane, unclaimed property complaints are something we take very seriously.  Each day, we work diligently with our client companies to perform unclaimed property reviews and ensure that they are in full compliance with the laws. We also conduct investigative research to contact our clients' constituents and help clients minimize the number of accounts that must be reported as unclaimed property."

How does this help people?  If it is not reported as unclaimed, how is someone who is looking for it going to find it?  I thought it was law that they had to report it as unclaimed funds if it is unclaimed?
That was what the NAUPA people told me.  Why would you make it so that it is not reported?

1

So that you can profit off of it?

Please let me know.

Thank you,

Cindy Marcus


--
Cindy Marcus
Real Estate Investments Del Sol, Inc.
805-451-4040
cindymarcus7@gmail.com
DRE # 01263528

_____

The preceding e-mail message contains information that is confidential, may be protected
by the attorney/client privileges, and may constitute non-public information. It is
intended to be conveyed only to the designated recipient(s). If you are not an intended
recipient of this message, please notify the sender at 610-232-0700.
Unauthorized use, dissemination, distribution, or reproduction of this message is strictly
prohibited and may be unlawful.


--
Cindy Marcus
Real Estate Investments Del Sol, Inc.
805-451-4040
cindymarcus7@gmail.com
DRE # 01263528

2

**EXHIBIT "D"**

## Lester J. Tanner

**From:**    Peg Moulder [peg.moulder@crederian.com]
**Sent:**    Tuesday, November 15, 2011 4:27 PM
**To:**      'Cindy Marcus'
**Cc:**      'Les Tanner'; 'Lester J. Tanner'
**Subject:** RE: Estate of Harold Marcus, MD. PC.

Hi Cindy,
Thank you for this information. I will keep you updated as we move forward with this.

Thanks
Peg Moulder

**From:** Cindy Marcus [mailto:cindymarcus7@gmail.com]
**Sent:** Tuesday, November 15, 2011 4:09 PM
**To:** Peg Moulder
**Cc:** Les Tanner; Lester J. Tanner
**Subject:** Re: Estate of Harold Marcus, MD. PC.

Hi Peg,

Thank you for the information. The executor of my father's estate was Les Tanner. His phone number is 917-579-1900 and his e-mail address is ltanner@mandmrecovery.com. He also has an e-mail address at lestanner18@gmail.com. I have attached a copy of my father's death certificate. His office address was 9 E 96th St and his office was sold after he died. Les Tanner can provide you with the other documents that you need. I have forwarded your e-mail to me to him.

Thanks again,

Cindy

On Tue, Nov 15, 2011 at 7:33 AM, Peg Moulder <peg.moulder@crederian.com> wrote:
Good Morning Cindy,
I wanted to let you know that I did receive your voice mail from last evening.

In response to your inquiry, I wanted to let you know that when our organization received the data files from Reserve there was no indication that your father had passed away. The account was not re registered as an estate account nor was it liquidated after the passing of your father in 1991. The fund was closed in September 2008 and the checks that were issued were part of the various distributions which were court ordered. All of those checks were sent to the following address:

9 East 96th St
New York, NY 10128

This information is based on what was provided to us by Reserve. There was no indication from Reserve that those checks had been returned but they remained outstanding on the fund's books.

I have made an outcall to the bank with respect to the checks that were cashed and what account

11/16/2011

the money was deposited in.

Before I can issue a late return item by the issuing bank, I will need to obtain some information from your attorney:

1.  A certified copy of the death certificate

2.  Letter of Testamentary

3.  Affidavit of Domicile

4.  Letter of instruction indicating how the account should be registered.

I will call you later as we are on the east coast and you are in California and it is early yet.

Regards,
Peg Moulder

---

From: Debbie Zumoff [mailto:dzumoff@keaneup.com]
Sent: Monday, November 14, 2011 6:04 PM
To: Cindy Marcus
Cc: Peg Moulder
Subject: Estate of Harold Marcus, MD. PC.
Importance: High

Cindy and Peg:

I've shared some of the detail on this account with Cindy and think the best approach at this point is for the two of you to speak directly. Once you resolve the fate of the checks reissued in May 2011, please let me know what happened. Understanding these types of scenarios is critical to reinforcing the value of Keane's services to the issuer community and the legal claimants of deceased securities owners.

Thanks so much and good luck!

Deb

Debbie L. Zumoff
Chief Compliance Officer

P. 1.800.848.8896 ext.3004  D. 610-232-0704  C. 215.470.0285  F. 610.232.0798  E. dzumoff@keaneUP.com
1400 Liberty Ridge Drive • Suite 201 • Wayne, PA 19087
www.KeaneUP.com

Error! Filename not specified.

Important note: On December 14, 2010 Venio, LLC and The Keane Organization joined forces to become the clear leader in the unclaimed property industry. The combined company, now operating under the name Keane, provides unmatched communication, consulting and compliance services

11/16/2011

Please consider the environment before printing this email

The preceding e-mail message contains information that is confidential, may be protected by the attorney/client privileges, and may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender at 610-232-0700. Unauthorized use, dissemination, distribution, or reproduction of this message is strictly prohibited and may be unlawful.

--
Cindy Marcus
Real Estate Investments Del Sol, Inc.
805-451-4040
cindymarcus7@gmail.com
DRE # 01263528

**EXHIBIT "E"**

## Lester J. Tanner

| | |
|---|---|
| From: | Lester Tanner [lestanner18@gmail.com] |
| Sent: | Wednesday, November 16, 2011 9:26 AM |
| To: | ltanner@mandmrecovery.com |
| Subject: | Fwd: Estate of Harold Marcus, MD. PC. |

---------- Forwarded message ----------
From: Peg Moulder <peg.moulder@crederian.com>
Date: Wed, Nov 16, 2011 at 8:30 AM
Subject: RE: Estate of Harold Marcus, MD. PC.
To: Lester Tanner <lestanner18@gmail.com>, 'ltanner@mandmrecovery.com.'
Cc: Cindy Marcus <cindymarcus7@gmail.com>

Good Morning Mr. Tanner,
Please find below my street address and phone number:

Crederian Fund Services, llc
1400 N Providence Rd.
Suite 5035
Media, PA 19063

Phone: 484-442-8119
Fax ; 800-691-7564

I have contacted the bank where the checks were cashed and there is sufficient funds to
issue a late return. Once I receive the documentation from you I will proceed with the
request for the late return of the paid checks. The checks were cashed by a Harold Marcus,
MD in California. I have obtained copies of the paid checks and have been in contact with
the bank.

Regards,
Peg Moulder

-----Original Message-----
From: Lester Tanner [mailto:lestanner18@gmail.com]
Sent: Tuesday, November 15, 2011 5:26 PM
To: Peg Moulder
Subject: Re: Estate of Harold Marcus, MD. PC.

This is Lester Tanner. Please send me your address and telephone numbers to both email
addresses given to you by Cindy Marcus.
Tomorrow I will be in my office gathering the documents you have requested and
transmitting them to you by email and/or mail as the documents permit. Will you be able
to determine who cashed a check made payable to Harold Marcus at the 9 East 96 Street
address. Harold Marcus MD died some 20 years ago. I was the Executor of his Estate and
recently had Letters Testamentary issued to reclaim funds from New York State's Office.
Thank you for your assistance in this matter.

On Tue, Nov 15, 2011 at 4:27 PM, Peg Moulder <peg.moulder@crederian.com>
wrote:
> Hi Cindy,
>
> Thank you for this information. I will keep you updated as we move
> forward with this.
>
>
>
> Thanks
>
> Peg Moulder
>
>

i

> From: Cindy Marcus [mailto:cindymarcus7@gmail.com]
> Sent: Tuesday, November 15, 2011 4:09 PM
> To: Peg Moulder
> Cc: Les Tanner; Lester J. Tanner
> Subject: Re: Estate of Harold Marcus, MD. PC.
>
>
>
> Hi Peg,
>
>
>
> Thank you for the information.  The executor of my father's estate was
> Les Tanner.  His phone number is 917-579-1900 and his e-mail address
> is ltanner@mandmrecovery.com.  He also has an e-mail address at
> lestanner18@gmail.com.   I have attached a copy of my father's death
> certificate.  His office address was 9 E 96th St and his office was
> sold after he died.  Les Tanner can provide you with the other
> documents that
you
> need.  I have forwarded your e-mail to me to him.
>
>
>
> Thanks again,
>
>
>
> Cindy
>
> On Tue, Nov 15, 2011 at 7:33 AM, Peg Moulder
> <peg.moulder@crederian.com>
> wrote:
>
> Good Morning Cindy,
>
> I wanted to let you know that I did receive your voice mail from last
> evening.
>
>
>
> In response to your inquiry, I wanted to let you know that when our
> organization received the data files from Reserve there was no
> indication that your father had passed away. The account was not re
> registered as an estate account nor was it liquidated after the
> passing of your father in 1991. The fund was closed in September 2008
> and the checks that were
issued
> were part of the various distributions which were court ordered. All
> of those checks were sent to the following address:
>
>
>
> 9 East 96th St
>
> New York, NY 10128
>
>
>
> This information is based on what was provided to us by Reserve. There
> was no indication from Reserve that those checks had been returned but
> they remained outstanding on the fund's books.
>
>
>
> I have made an outcall to the bank with respect to the checks that

2

> were cashed and what account the money was deposited in.
>
>
>
> Before I can issue a late return item by the issuing bank, I will need
> to obtain some information from your attorney:
>
>
>
> 1.      A certified copy of the death certificate
>
> 2.      Letter of Testamentary
>
> 3.      Affidavit of Domicile
>
> 4.      Letter of instruction indicating how the account should be
> registered.
>
>
>
> I will call you later as we are on the east coast and you are in
California
> and it is early yet.
>
>
>
> Regards,
>
> Peg Moulder
>
>
>
>
>
>
>
> From: Debbie Zumoff [mailto:dzumoff@keaneup.com]
> Sent: Monday, November 14, 2011 6:04 PM
> To: Cindy Marcus
> Cc: Peg Moulder
> Subject: Estate of Harold Marcus, MD. PC.
> Importance: High
>
>
>
> Cindy and Peg:
>
>
>
> I've shared some of the detail on this account with Cindy and think
> the
best
> approach at this point is for the two of you to speak directly.  Once
> you resolve the fate of the checks reissued in May 2011, please let me
> know
what
> happened.  Understanding these types of scenarios is critical to
reinforcing
> the value of Keane's services to the issuer community and the legal
> claimants of deceased securities owners.
>
>
>
> Thanks so much and good luck!
>
>
>

3

> Deb
>
>
>
> Debbie L. Zumoff
>
> Chief Compliance Officer
>
>
>
> P. 1.800.848.8896 ext.3004   D. 610-232-0704   C. 215.470.0285 F.
> 610.232.0798 E. dzumoff@keaneUP.com
> 1400 Liberty Ridge Drive • Suite 201 • Wayne, PA  19087
>
> www.KeaneUP.com
>
>
>
> Error! Filename not specified.
>
>
>
> Important note: On December 14, 2010 Venio, LLC and The Keane
> Organization joined forces to become the clear leader in the unclaimed
> property industry.  The combined company, now operating under the name
> Keane, provides unmatched communication, consulting and compliance
> services
>
> P Please consider the environment before printing this email
>
>
>
>
>
>
>
>
>
>
>
> _____
>
> The preceding e-mail message contains information that is
> confidential,
may
> be protected by the attorney/client privileges, and may constitute
> non-public information. It is intended to be conveyed only to the
designated
> recipient(s). If you are not an intended recipient of this message,
> please notify the sender at 610-232-0700. Unauthorized use,
> dissemination, distribution, or reproduction of this message is
> strictly prohibited and
may
> be unlawful.
>
>
> --
> Cindy Marcus
> Real Estate Investments Del Sol, Inc.
> 805-451-4040
> cindymarcus7@gmail.com
> DRE # 01263528

**EXHIBIT "F"**

**Lester J. Tanner, Esq.**
**145 Huguenot Street Suite 204**
**New Rochelle, NY 10801**
**Tel: 914-385-0244**
**E Mail & Federal Express**

To:         peg.moulder@crederian.com
              Crederian Fund Services, LLC
              1400 N. Providence Road Suite 5035
              Media, PA 19063
              Tel:  484-442-8119
              Fax: 800-691-7564

cc:       by email only to Cindy Marcus

From:     Lester J. Tanner, Esq.

Date:      November 16, 2011

Subject:   **Unclaimed Funds of Harold Marcus at Reserve Fund and this
Letter of Instruction indicating how the account should be registered:**

Message:    Enclosed are the following:

1.    Affidavit of Domicile providing the information with respect to Harold Marcus, MD.

2.    The Account should be registered and all payments should be made to "The Estate of Harold Marcus" which has a bank account at Bank of America on North Avenue in New Rochelle (routing number 021000322) and Account No. 483035773440.

3.    Certified copy of the death certificate.

4.    Letters Testamentary.

5.    IRS Notice of Federal Identification Number.

Please keep me and Cindy Marcus informed of progress in recovering Dr. Marcus' unclaimed funds at the Reserve Account.  Thank you for your cooperation.

## Affidavit of Domicile

State of New York        )
                          ) ss:
County of Westchester)

        **LESTER J TANNER**, being duly sworn deposes and says:

        1.      I am an attorney at law admitted to practice in the State of New York. I reside at 175 Huguenot Street, Apt. P204, New Rochelle, N. Y. 10801 and have an office at 145 Huguenot Street, Suite 204, New Rochelle, N. Y. 10801

        2.      I am the Executor of the Last Will and Testament of Harold Marcus (whose social security number is 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), who died a resident of 296 Wilmot Avenue, New Rochelle, N. Y. on March 9, 1991. His Will dated April 22, 1986 was admitted to probate by the Westchester County Surrogate's Court on May 3, 1991 on which date I was appointed as the Executor. In connection with a search for unclaimed assets certification of my appointment and continuance as Executor was issued on November 8, 2010.

        3.      Harold Marcus MD was a psychiatrist who practiced at 9 East 96th Street, New York, N. Y. 10023 for many years prior to his death. Before his purchase of 296 Wilmot Road, he resided at another residence in New Rochelle for many years.

        4.      This affidavit is made in connection with the recovery by the Estate of Harold Marcus (Federal ID#37-6474437) of unclaimed funds belonging to Harold Marcus MD of New Rochelle, N. Y. who practiced at 9 East 96th Street in New York City, New York State.

                                            Lester J. Tanner

Sworn to before me
this 16th day of November 2011

_Florence M. Mannion_
     _Notary Public_

Florence M. Mannion
Notary Public, State of New York
No. 01MA6026883
Qualified in New York County
Commission Expires June 21, 20_15_

**CERTIFICATE OF DEATH**

5404

REGISTER NUMBER
172

1. NAME FIRST: HAROLD  MIDDLE  LAST: MARCUS

2. SEX: MALE (X)  FEMALE

3. DATE OF DEATH: MONTH 3 DAY 9 YEAR 91 HOUR 2:47 P

RESIDENCE

4A. PLACE OF DEATH: HOSPITAL (Check only one): INPATIENT, OCA, ER; NURSING HOME; PRIVATE RESIDENCE; OTHER (Specify)

4B. IF FACILITY, DATE ADMITTED: MONTH  DAY  YEAR

4C. NAME OF FACILITY: (If not hospital give address)
296 WILMOT ROAD

4D. LOCALITY: (Check one and specify): CITY OF; VILLAGE OF; TOWN OF — NEW ROCHELLE

4E. COUNTY OF DEATH: WESTCHESTER

NCHS

NEW ROCHELLE

4F. MEDICAL RECORD NO.: NEW 91-529   4G. WAS DECEDENT TRANSFERRED FROM ANOTHER INSTITUTION?: NO (X) YES

5. DATE OF BIRTH: MONTH 7 DAY 18 YEAR 22

6. AGE: 68 yrs.  IF UNDER 1 YEAR: MONTHS DAYS; IF UNDER 1 DAY: HOURS MINUTES

7A. CITY AND STATE OF BIRTH: (County and in U.S.A.): BROOKLYN, N.Y.

7B. IF AGE UNDER 1 YEAR, NAME OF HOSPITAL OF BIRTH:

8. SERVED IN U.S. ARMED FORCES? (Specify years): NO  YES (X) WWII

9. RACE: (Black, White, etc.): WHITE

10. HISPANIC ORIGIN? (If yes, specify): NO (X) YES

11. EDUCATION: (Check only one)

12. SOCIAL SECURITY NUMBER: 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

13. MARITAL STATUS: NEVER MARRIED; MARRIED (X); SEPARATED; WIDOWED; DIVORCED

14. SURVIVING SPOUSE: (If wife, provide maiden name): ELIZABETH HAVENS ATWOOD

15A. USUAL OCCUPATION: (Do not enter retired): PHYSICIAN

15B. KIND OF BUSINESS OR INDUSTRY: MEDICINE

15C. NAME AND LOCALITY OF COMPANY OR FIRM: NEW YORK CITY

16A. RESIDENCE STATE: NEW YORK

16B. COUNTY: WESTCHESTER

16C. CITY OF; VILLAGE OF; TOWN OF: NEW ROCHELLE

16D. IF CITY OR VILLAGE, IS RESIDENCE WITHIN CITY OR VILLAGE LIMITS? YES; NO (X) SPECIFY TOWN

16E. STREET AND NUMBER OF RESIDENCE: 296 WILMONT ROAD

16F. ZIP CODE: 10804

17. NAME OF FATHER: FIRST HYMAN  MIDDLE  LAST MARCUS

18. MAIDEN NAME OF MOTHER: FIRST ANNA  LAST LIEBERMAN

19A. NAME OF INFORMANT: ELIZABETH ATWOOD MARCUS

19B. MAILING ADDRESS: (Include zip code): 296 WILMONT ROAD NEW ROCHELLE N.Y. 10804

20A. BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION: (Specify): BURIAL  MONTH 3 DAY 12 YEAR 91

20B. PLACE OF BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION: KENSICO CEMETERY

20C. LOCATION: (City or town and state): VALHALLA, N.Y.

21A. NAME AND ADDRESS OF FUNERAL HOME: WESTCHESTER RIVERSIDE 21 W BROAD ST MOUNT VERNON N.Y. 10552

21B. REGISTRATION NUMBER: 02106

22A. NAME OF FUNERAL DIRECTOR: JOHN F. FOLEY

22B. SIGNATURE OF FUNERAL DIRECTOR: Jun Foley

22C. REGISTRATION NUMBER: 01766

23A. SIGNATURE OF REGISTRAR: Mary Louise Sweeney

23B. DATE FILED: 03 12 91

24A. BURIAL OR REMOVAL PERMIT ISSUED BY: Nora Washta

24B. DATE ISSUED: 03 12 91

ITEMS 25 THROUGH 33 TO BE COMPLETED BY CERTIFYING PHYSICIAN — OR — ITEMS 25 THROUGH 33 TO BE COMPLETED BY CORONER OR MEDICAL EXAMINER

25A. TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSES STATED. SIGNATURE

25A. ON THE BASIS OF INVESTIGATION AND SUCH EXAMINATIONS, AS I FELT NECESSARY BY MY OPINION DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSES STATED. SIGNATURE AND TITLE: Stephen D. Comparini MD XX MEDICAL EXAMINER  CORONER; CORONER'S PHYSICIAN

25B. THE PHYSICIAN ATTENDED THE DECEASED: MONTH DAY YEAR FROM / TO

25C. DATE LAST SEEN ALIVE: MONTH DAY YEAR

25B. PRONOUNCED DEAD: ON MONTH 3 DAY 9 YEAR 91 HOUR 2:47 Pm

25C. DATE SIGNED: MONTH 3 DAY 10 YEAR 91

25D. NAME OF ATTENDING PHYSICIAN:

25D. LICENSE NUMBER:

25B. SIGNATURE OF CORONER OR CORONER'S PHYSICIAN, IF OTHER THAN CERTIFIER:

26. NAME AND ADDRESS OF CERTIFIER: Silvio O. Comparini, M.D., Westchester County Medical Examiner's Office, Valhalla, NY

26F. MD/COR. PHYS. LICENSE NUMBER: 121925

27. MANNER OF DEATH: NATURAL CAUSE; ACCIDENT; HOMICIDE; SUICIDE; UNDETERMINED CIRCUMSTANCES; PENDING INVESTIGATION

28. WAS CASE REFERRED TO CORONER OR MEDICAL EXAMINER?: NO; YES (XX)

29. IF YES, WERE FINDINGS USED TO DETERMINE CAUSE OF DEATH?: NO; YES

CONFIDENTIAL     SEE INSTRUCTION SHEET FOR COMPLETING CAUSE OF DEATH     CONFIDENTIAL

30. DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR (A), (B), AND (C).)

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

PART I. IMMEDIATE CAUSE:
(a) ARTERIOSCLEROTIC CARDIOVASCULAR DISEASE AND CHRONIC OBSTRUCTIVE
DUE TO OR AS A CONSEQUENCE OF:
(b) PULMONARY DISEASE

IS A TRUE COPY

PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN PART (A):

Rita O. Colangelo
DEPUTY REGISTRAR OF VITAL STATISTICS

31A. IF INJURY, DATE: MONTH DAY YEAR

31B. HOUR:

31B. INJURY: (City or town and county and state):

33. DESCRIBE HOW INJURY OCCURRED:

31D. PLACE:

31E. AT WORK?: NO; YES

32. WAS DECEDENT HOSPITALIZED IN LAST 2 MONTHS?: NO; YES

33A. IF FEMALE, WAS DECEDENT PREGNANT IN LAST 3 MONTHS?: NO; YES

33B. IF PREGNANT IN LAST 3 MONTHS WHEN DID PREGNANCY END?: MONTHS

34. PREGNANCY/TERM DELIVERY: MONTH DAY YR

DOH-1961 (7/90)

Certificate# 53837

# SURROGATE'S COURT OF THE STATE OF NEW YORK
## WESTCHESTER COUNTY

**File #: 1991-879**



## CERTIFICATE OF APPOINTMENT OF EXECUTOR(S)

T IS HEREBY CERTIFIED that Letters in the estate of the Decedent named below have been granted by this court, as follows:

Name of Decedent:     **Harold Marcus**          Date of Death: **March 9, 1991**

Domicile of Decedent:  **County Of Westchester**

Fiduciary Appointed:   **Lester J Tanner**
Mailing Address:       **145 Huguenot Street**
                       **Suite 204**
                       **New Rochelle NY 10801**

Type of Letters Issued: **LETTERS TESTAMENTARY**

Letters Issued On:     **May 3, 1991**

Limitations:          **NONE**

And such Letters are unrevoked and in full force as of this date.

Dated: **November 08, 2010**

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Westchester County Surrogate's Court at White Plains, New York.

WITNESS, Hon. Anthony A. Scarpino Jr., Judge of the Westchester County Surrogate's Court.

Charles T Scott, Esq., Chief Clerk
Westchester County Surrogate's Court

*This Certificate is Not Valid Without the Raised Seal of the Westchester County Surrogate's Court*

X

**IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH   45999-0023

Date of this notice:   01-11-2011

Employer Identification Number:
37-6474437

000616.826320.0004.001 1 MB 0.382 532

Form:  SS-4

Number of this notice:   CP 575 B

ESTATE OF HAROLD   MARCUS
LESTER J TANNER EX
175 HUGUENOT ST STE P204
NEW ROCHELLE  NY   10801

For assistance you may call us at:
1-800-829-4933

0616

IF YOU WRITE, ATTACH THE
STUB OF THIS NOTICE.

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN 37-6474437. This EIN will identify your estate or trust. If you are not the applicant, please contact the individual who is handling the estate or trust for you. Please keep this notice in your permanent records.

When filing tax documents, payments, and related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above. Any variation may cause a delay in processing, result in incorrect information in your account, or even cause you to be assigned more than one EIN. If the information is not correct as shown above, please make the correction using the attached tear off stub and return it to us.

Based on the information received from you or your representative, you must file the following form(s) by the date(s) shown.

Form 1041                    04/15/2012

If you have questions about the form(s) or the due dates(s) shown, you can call us at the phone number or write to us at the address shown at the top of this notice. If you need help in determining your annual accounting period (tax year), see Publication 538, Accounting Periods and Methods.

We assigned you a tax classification based on information obtained from you or your representative. It is not a legal determination of your tax classification and is not binding on the IRS. If you want a legal determination of your tax classification, you may request a private letter ruling from the IRS under the guidelines in Revenue Procedure 2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue). Note: Certain tax classification elections can be requested by filing Form 8832, Entity Classification Election. See Form 8832 and its instructions for additional information.

(IRS USE ONLY)   575B        01-11-2011  MARC  B  0231870440  SS-4

)616

Keep this part for your records.        CP 575 B (Rev. 7-2010)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Return this part with any correspondence
so we may identify your account.  Please                    CP 575 B
correct any errors in your name or address.
                                                           0231870440

Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  01-11-2011
(     )    -                              EMPLOYER IDENTIFICATION NUMBER:  37-6474437
                                          FORM:  SS-4               NOBOD
_____        _____

INTERNAL REVENUE SERVICE                  ESTATE OF HAROLD   MARCUS
CINCINNATI  OH   45999-0023               LESTER J TANNER EX
|.|..|.|.|.|.|.|..|.|.|.|..|.|..||....|.|..|.|.|.|.|  175 HUGUENOT ST STE P204
                                          NEW ROCHELLE  NY   10801

**FedEx Express — US Airbill**

FedEx Tracking Number: 8744 5597 8460

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

Sender's Copy

**1 From**  Please print and press hard.

Date: Nov. 16, 2011    Sender's FedEx Account Number

SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name: Lester J. Tanner    Phone: 914/285-0344

Company: LESTER J. TANNER ESQ

Address: 145 HUGUENOT ST STE 204

City: NEW ROCHELLE    State: NY    ZIP: 10801-5113

**2 Your Internal Billing Reference**

**3 To**

Recipient's Name: Ms. Peg Moulder    Phone: 484/442 8119

Company: Crederian Fund Services LLC

Address: 1400 N. Providence Rd  Suite 5035

City: Media    State: PA    ZIP: 19063

0429388653

**4a Express Package Service**    *To most locations.    Packages up to 150 lbs.

☑ FedEx Priority Overnight    ☐ FedEx Standard Overnight    ☐ FedEx First Overnight

**4b Express Freight Service**    **To most locations.    Packages over 150 lbs.

CALL 1.800.332.0807

☐ FedEx 1Day Freight    ☐ FedEx 2Day Freight    ☐ FedEx 3Day Freight

**5 Packaging**    *Declared value limit $500.

☐ FedEx Envelope*    ☐ FedEx Pak*    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other

**6 Special Handling and Delivery Signature Options**

☐ SATURDAY Delivery

Does this shipment contain dangerous goods?

☑ No    ☐ Yes    ☐ Yes    ☐ Dry Ice    ☐ Cargo Aircraft Only

**7 Payment**   Bill to:

☑ Sender    ☐ Recipient    ☐ Third Party    ☐ Credit Card    ☐ Cash/Check

Total Packages    Total Weight    Total Declared Value

505

fedex.com 1.800.GoFedEx 1.800.463.3339

## Lester J. Tanner

| | |
|---|---|
| **From:** | Lester J. Tanner |
| **Sent:** | Wednesday, November 16, 2011 11:43 AM |
| **To:** | Peg Moulder (peg.moulder@crederian.com) |
| **Cc:** | Cindy Marcus (cindymarcus7@gmail.com) |
| **Subject:** | Unclaimed Funds Harld Marcus at Reserve Fund |
| **Attachments:** | E Mail Peg Moulder re Marcus 11-16-11.doc; Affidavit of Domicile.doc; DEATH CERTIFICATE.pdf; TESTAMENTRY.pdf; IRS NOTICE FED ID NUMBER.pdf |

**EXHIBIT "G"**

## Lester J. Tanner

| | |
|---|---|
| **From:** | Lester J. Tanner |
| **Sent:** | Wednesday, November 16, 2011 1:22 PM |
| **To:** | 'Peg Moulder'; Lester J. Tanner |
| **Cc:** | 'Cindy Marcus' |

**Subject:** RE: Unclaimed Funds Harld Marcus at Reserve Fund

Use home address 175 Huguenot Street and home email Lestanner18@gmail.com

---

**From:** Peg Moulder [mailto:peg.moulder@crederian.com]
**Sent:** Wednesday, November 16, 2011 12:50
**To:** 'Lester J. Tanner'
**Cc:** 'Cindy Marcus'
**Subject:** RE: Unclaimed Funds Harld Marcus at Reserve Fund

Good Afternoon Mr. Tanner,
Thank you for the documents. I am awaiting to have the bank initiate the late return of the funds.
Once I receive those funds back into our account at State Street Bank we will wire the funds to
the account indicated on your instruction letter.

Going forward since there is a home and office address for you, which address would you like to
have any statements or future distributions sent to. If you can confirm that for me I will update
the account accordingly.

Regards,
Peg Moulder

---

**From:** Lester J. Tanner [mailto:LTanner@MandMRecovery.com]
**Sent:** Wednesday, November 16, 2011 11:41 AM
**To:** Peg Moulder (peg.moulder@crederian.com)
**Cc:** Cindy Marcus (cindymarcus7@gmail.com)
**Subject:** Unclaimed Funds Harld Marcus at Reserve Fund

11/16/2011

EXHIBIT "H"

**LESTER J. TANNER, Esq.**
145 Huguenot St. Suite 204
New Rochelle, NY 10801
Tel: (914) 385-0244
Fax: (914) 654-3068

November 30, 2011

<u>**First Class Mail**</u>
Ms. Peg Moulder
Crederian Fund Services, Inc.
1400 N. Providence Rd.
Suite 5035
Media, PA 19063
Tel: 484-442-8119

RE:     <u>Harold Marcus Deceased</u>

Dear Ms. Moulder:

We requested from the Office of Vital Statistics and received this morning the Certificate of Death of Dr. Marcus which is enclosed.

Sincerely,

Lester J. Tanner

Enc:

LOCAL REGISTRAR COPY

STATE OF NEW YORK
DEPARTMENT OF HEALTH
**CERTIFICATE OF DEATH**

*[Form heavily faded and overprinted with "VOID" watermarks; most handwritten entries are illegible]*

1. NAME: FIRST / MIDDLE / LAST
2. SEX: MALE / FEMALE
3A. DATE OF DEATH: MONTH / DAY / YEAR — 3 / ? / 91
3B. HOUR

4A. PLACE OF DEATH: HOSPITAL INPATIENT / OUTPATIENT / ER — NURSING HOME / PRIVATE RESIDENCE / OTHER

4C. NAME OF FACILITY: 290 WILMOT ROAD
4D. LOCALITY: NEW ROCHELLE
4E. COUNTY: WESTCHESTER

4F. MEDICAL RECORD NO: NRW 91-529
4G. WAS DECEDENT TRANSFERRED FROM ANOTHER INSTITUTION: NO / YES

5. DATE OF BIRTH: MONTH / DAY / YEAR
6. AGE
7A. CITY AND STATE OF BIRTH: Brooklyn, NY

8. SERVED IN U.S. ARMED FORCES
9B. RACE (Black, White, etc.)
10. HISPANIC ORIGIN: NO / YES
11. EDUCATION

12. SOCIAL SECURITY NUMBER
13. MARITAL STATUS: NEVER MARRIED / MARRIED / SEPARATED / WIDOWED / DIVORCED
14. SURVIVING SPOUSE

15A. USUAL OCCUPATION: Physician
15B. KIND OF BUSINESS OR INDUSTRY: Medicine
16C. NAME AND LOCALITY OF COMPANY OR FIRM: New Rochelle

16A. RESIDENCE STATE: New York
16B. COUNTY: Westchester
16C. LOCALITY: New Rochelle
16D. STREET AND NUMBER OR RESIDENCE: Wilmot Road
16E. ZIP CODE

17. NAME OF FATHER: FIRST / MI / LAST
18. MAIDEN NAME OF MOTHER: ANNA LIEBERMAN

19A. NAME OF INFORMANT
19B. MAILING ADDRESS

20A. BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION
20B. PLACE OF BURIAL, CREMATION, REMOVAL OR OTHER DISPOSAL
20C. LOCATION

21A. NAME AND ADDRESS OF FUNERAL HOME
21B. REGISTRATION NUMBER

22A. NAME OF FUNERAL DIRECTOR
22B. SIGNATURE OF FUNERAL DIRECTOR
22C. REGISTRATION NUMBER

23A. SIGNATURE OF REGISTRAR
23B. DATE FILED
24A. BURIAL OR REMOVAL PERMIT ISSUED BY
24B. DATE ISSUED: 03/25/91

ITEMS 25 THROUGH 33 TO BE COMPLETED BY CERTIFYING PHYSICIAN
— OR —
ITEMS 25 THROUGH 33 TO BE COMPLETED BY CORONER OR MEDICAL EXAMINER

25A. TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSES STATED. SIGNATURE
25B. THE PHYSICIAN ATTENDED THE DECEASED
26C. LAST SEEN ALIVE
25B. PRONOUNCED DEAD: ON 3 / 9 / 91 at 2:47 P.M.
25D. DATE SIGNED: 3 / 10 / 91

25D. NAME OF ATTENDING PHYSICIAN / LICENSE NUMBER
25E. SIGNATURE OF CORONER OR CORONER'S PHYSICIAN IF OTHER THAN CERTIFIER:
Silvia C. Comparini, M.D., Westchester County Medical Examiner's Office, Valhalla, NY
25F. MED. EXAM. PHYS. LICENSE NUMBER: 121925

27. MANNER OF DEATH: NATURAL CAUSES / ACCIDENT / HOMICIDE / SUICIDE / UNDETERMINED CIRCUMSTANCES / PENDING INVESTIGATION
28. WAS CASE REFERRED TO CORONER OR MEDICAL EXAMINER: NO / YES
29. AUTOPSY: YES / NO
29B. IF YES, WERE FINDINGS USED TO DETERMINE CAUSE OF DEATH: YES / NO

**CONFIDENTIAL**    SEE INSTRUCTION SHEET FOR COMPLETING CAUSE OF DEATH    **CONFIDENTIAL**

30. DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR (A), (B) AND (C).)
APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

PART I. IMMEDIATE CAUSE:
(A) ARTERIOSCLEROTIC CARDIOVASCULAR DISEASE AND CHRONIC OBSTRUCTIVE
DUE TO, OR AS A CONSEQUENCE OF:
(B) PULMONARY DISEASE
DUE TO, OR AS A CONSEQUENCE OF:
(C)

PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN PART I (A)

31A. IF INJURY, DATE / HOUR
31B. LOCALITY (City or town, and county and state)
31C. DESCRIBE HOW INJURY OCCURRED

31D. PLACE
31E. AT WORK: NO / YES
32. WAS DECEDENT HOSPITALIZED IN LAST 2 MONTHS: NO / YES
33A. IF FEMALE, WAS DECEDENT PREGNANT IN LAST 3 MONTHS: NO / YES
33B. DATE OF DELIVERY

DOH-1961 (2/90)



City of New Rochelle
515 North Avenue
New Rochelle, New York 10801
(914) 654-2159

# RECEIPT
# #003072

11/29/2011

Tanner, Esq. Lester
D/c For Harold Marcus

Received $ 10.00 for Death Transcripts, on 11/29/2011.

Thank you, as always, it is our pleasure to serve you.

Bennie F. Giles, III
City Clerk

EXHIBIT "I"

# LESTER J. TANNER, Esq.
**145 Huguenot St. Suite 325**
**New Rochelle, NY 10801**
**Tel: (914) 385-0244**
**Fax: (914) 654-3068**

May 24, 2012

**E Mail and First Class Mail**
Ms. Peg Moulder
Crederian Fund Services, Inc.
1400 N. Providence Rd.
Suite 5035
Media, PA 19063
Tel: 484-442-8119

RE:     Harold Marcus Deceased

Dear Ms. Moulder:

It has now been six months since we furnished to you all the documentation you requested to have Dr. Harold Marcus' funds restored to his Estate. On January 13, 2012 you informed Cindy Marcus and me that the Federal Reserve would take time to finalize the refund and you will keep us posted. No information has come to me since that date. Please advise when the refund will be obtained.

I will recommend to Cindy that she retain counsel in Media, Pa in late June if necessary. Thank you for a prompt response.

Sincerely,

Lester J. Tanner

Enc:

cc: Cindy Marcus
E-MAIL

EXHIBIT "J"

## Lester J. Tanner

**From:** Peg Moulder [peg.moulder@crederian.com]

**Sent:** Thursday, May 24, 2012 1:48 PM

**To:** 'Lester J. Tanner'

**Cc:** 'Cindy Marcus'

**Subject:** RE: Harold Marcus Deceased

Mr. Tanner,
I received your letter. I wired the funds to Cindy on January 20, 2012. Cindy also confirmed
receipt of those funds.

Please advise
Regards,
Peg Moulder

---

**From:** Lester J. Tanner [mailto:LTanner@MandMRecovery.com]
**Sent:** Thursday, May 24, 2012 1:44 PM
**To:** Peg Moulder (peg.moulder@crederian.com)
**Cc:** Cindy Marcus (cindymarcus7@gmail.com)
**Subject:** Harold Marcus Deceased

*What happened to those funds ?*

5/24/2012

**EXHIBIT "K"**

**Lester J. Tanner**

| | |
|---|---|
| From: | Cindy Marcus [cindymarcus7@gmail.com] |
| Sent: | Thursday, May 24, 2012 1:51 PM |
| To: | Lester J. Tanner |
| Subject: | Re: Harold Marcus Deceased |

I already received the funds.

On Thu, May 24, 2012 at 10:44 AM, Lester J. Tanner <LTanner@mandmrecovery.com> wrote:
>
>
>


--
Cindy Marcus
Real Estate Investments Del Sol, Inc.
805-451-4040
cindymarcus7@gmail.com
DRE # 01263528

1

**EXHIBIT "L"**

**Lester J. Tanner**

From:          Lester J. Tanner
Sent:          Thursday, May 24, 2012 2:00 PM
To:            'Cindy Marcus'
Subject:       RE: Harold Marcus Deceased

What happened to the funds?

Les

-----Original Message-----
From: Cindy Marcus [mailto:cindymarcus7@gmail.com]
Sent: Thursday, May 24, 2012 13:51
To: Lester J. Tanner
Subject: Re: Harold Marcus Deceased

I already received the funds.

On Thu, May 24, 2012 at 10:44 AM, Lester J. Tanner <LTanner@mandmrecovery.com> wrote:
>
>
>


--
Cindy Marcus
Real Estate Investments Del Sol, Inc.
805-451-4040
cindymarcus7@gmail.com
DRE # 01263528

1

**EXHIBIT "M"**

## Lester J. Tanner

From:           Cindy Marcus [cindymarcus7@gmail.com]
Sent:           Thursday, May 24, 2012 2:26 PM
To:             Lester J. Tanner
Subject:        Re: Harold Marcus Deceased

She wired them to me.  I still have not received the funds from my sister from my mother's
estate and both my sister and brother are getting the return from the Palmer tennis club
and they have cut me out of that so we are not quite even yet.  I received a letter from
my sister's attorney after my mother died to not talk to her about my mother's estate so I
haven't spoken to her since then.

On Thu, May 24, 2012 at 10:59 AM, Lester J. Tanner <LTanner@mandmrecovery.com> wrote:
> What happened to the funds?
>
> Les
>
> -----Original Message-----
> From: Cindy Marcus [mailto:cindymarcus7@gmail.com]
> Sent: Thursday, May 24, 2012 13:51
> To: Lester J. Tanner
> Subject: Re: Harold Marcus Deceased
>
> I already received the funds.
>
> On Thu, May 24, 2012 at 10:44 AM, Lester J. Tanner
> <LTanner@mandmrecovery.com> wrote:
>>
>>
>>
>
>
>
> --
> Cindy Marcus
> Real Estate Investments Del Sol, Inc.
> 805-451-4040
> cindymarcus7@gmail.com
> DRE # 01263528


--
Cindy Marcus
Real Estate Investments Del Sol, Inc.
805-451-4040
cindymarcus7@gmail.com
DRE # 01263528

As Executor of the
Harold Marcus Estate,
please inform me as to
the amount of the
check you disbursed to
Cindy Marcus for the funds
belong to the Estate of Cindy
Harold Marcus and a copy of the
check.  Thank you
cc Cindy Marcus
Richard Marcus

**EXHIBIT "N"**

## Lester J. Tanner

**From:**    Lester J. Tanner
**Sent:**    Thursday, May 31, 2012 10:27 AM
**To:**      'Peg Moulder'
**Subject:** RE: Harold Marcus Deceased

Ms. Moulder:

As Executor of the Harold Marcus Estate, please inform me as to the date, the payee and the amount of the check you disbursed to Cindy Marcus for the funds belonging to the Estate of Harold Marcus and a copy of the check.

Thank you.

Les Tanner

---

**From:** Peg Moulder [mailto:peg.moulder@crederian.com]
**Sent:** Thursday, May 24, 2012 13:48
**To:** 'Lester J. Tanner'
**Cc:** 'Cindy Marcus'
**Subject:** RE: Harold Marcus Deceased

Mr. Tanner,
I received your letter. I wired the funds to Cindy on January 20, 2012. Cindy also confirmed receipt of those funds.

Please advise
Regards,
Peg Moulder

---

**From:** Lester J. Tanner [mailto:LTanner@MandMRecovery.com]
**Sent:** Thursday, May 24, 2012 1:44 PM
**To:** Peg Moulder (peg.moulder@crederian.com)
**Cc:** Cindy Marcus (cindymarcus7@gmail.com)
**Subject:** Harold Marcus Deceased

EXHIBIT "O"

## Lester J. Tanner

**From:**   Lester J. Tanner
**Sent:**   Thursday, May 31, 2012 10:49 AM
**To:**   'Peg Moulder'
**Subject:** RE: Harold Marcus Deceased

Please tell me the "full amount due for each of the checks" and the date and amount of the wire to Cindy Marcus.

Les

---

**From:** Peg Moulder [mailto:peg.moulder@crederian.com]
**Sent:** Thursday, May 31, 2012 10:34
**To:** 'Lester J. Tanner'
**Subject:** RE: Harold Marcus Deceased

Mr. Tanner,
A wire was sent to Cindy Marcus for the full amount due for the checks. I confirmed her receipt of the wire in January and she also advised me the other day that she called you regarding your correspondence as this is a closed issue.


Regards.
Peg Moulder

**From:** Lester J. Tanner [mailto:LTanner@MandMRecovery.com]
**Sent:** Thursday, May 31, 2012 10:26 AM
**To:** Peg Moulder
**Subject:** RE: Harold Marcus Deceased

Ms. Moulder:

As Executor of the Harold Marcus Estate, please inform me as to the date, the payee and the amount of the check you disbursed to Cindy Marcus for the funds belonging to the Estate of Harold Marcus and a copy of the check.

Thank you.

Les Tanner

---

**From:** Peg Moulder [mailto:peg.moulder@crederian.com]
**Sent:** Thursday, May 24, 2012 13:48
**To:** 'Lester J. Tanner'
**Cc:** 'Cindy Marcus'
**Subject:** RE: Harold Marcus Deceased

Mr. Tanner,
I received your letter. I wired the funds to Cindy on January 20, 2012. Cindy also confirmed receipt of those funds.

Please advise
Regards,
Peg Moulder

EXHIBIT "P"

## Lester J. Tanner

**From:**     Peg Moulder [peg.moulder@crederian.com]
**Sent:**     Thursday, May 31, 2012 11:09 AM
**To:**       'Lester J. Tanner'
**Subject:** RE: Harold Marcus Deceased

Mr. Tanner,
Please contact Cindy as she is the authorized individual on this account.

Regards,
Peg Moulder

**From:** Lester J. Tanner [mailto:LTanner@MandMRecovery.com]
**Sent:** Thursday, May 31, 2012 10:48 AM
**To:** Peg Moulder
**Subject:** RE: Harold Marcus Deceased

Please tell me the "full amount due for each of the checks" and the date and amount of the wire to Cindy Marcus.

Les

**From:** Peg Moulder [mailto:peg.moulder@crederian.com]
**Sent:** Thursday, May 31, 2012 10:34
**To:** 'Lester J. Tanner'
**Subject:** RE: Harold Marcus Deceased

Mr. Tanner,
A wire was sent to Cindy Marcus for the full amount due for the checks. I confirmed her receipt of the wire in January and she also advised me the other day that she called you regarding your correspondence as this is a closed issue.

Regards,
Peg Moulder

**From:** Lester J. Tanner [mailto:LTanner@MandMRecovery.com]
**Sent:** Thursday, May 31, 2012 10:26 AM
**To:** Peg Moulder
**Subject:** RE: Harold Marcus Deceased

Ms. Moulder:

As Executor of the Harold Marcus Estate, please inform me as to the date, the payee and the amount of the check you disbursed to Cindy Marcus for the funds belonging to the Estate of Harold Marcus and a copy of the check.

Thank you.

Les Tanner

**From:** Peg Moulder [mailto:peg.moulder@crederian.com]

5/31/2012

**EXHIBIT "Q"**

**LESTER J. TANNER, Esq.**
145 Huguenot St. Suite 325
New Rochelle, NY 10801
Tel: (914) 385-0244
Fax: (914) 654-3068

May 31, 2012

E Mail
Ms. Peg Moulder
Crederian Fund Services, Inc.
1400 N. Providence Rd.
Suite 5035
Media, PA 19063
Tel: 484-442-8119

RE:   Harold Marcus Deceased

Dear Ms. Moulder:

On November 16, 2011 I sent to you by email and Federal Express a Letter of
Instructions indicating how the Account for the Unclaimed Funds of Harold Marcus at Reserve
Funds should be registered. I enclosed (i) an Affidavit of Domicile providing the information
with respect to Harold Marcus, M. D, (ii) a copy of the death certificate, (iii) Letter Testamentary
appointing me as the sole Executor and (iv) the IRS Notice of the Estate's Federal Identification
Number.

I specifically stated that "The Account should be registered and all payments should
be made to "The Estate of Harold Marcus." I expressly requested that you keep me
informed of progress in recovering Dr. Marcus's unclaimed funds.

I have learned only on May 24, 2012 in response to my letter that you wired the funds to
Cindy Marcus on January 20, 2012. Why was I not informed that the Estate's funds were
recovered? Why did you disburse the funds to Cindy Marcus instead of the Estate of Harold
Marcus? Why do you not inform me now of the full amount of funds which was wired to Cindy
Marcus instead of The Estate of Harold Marcus? Cindy Marcus was not the proper authorized
individual on this account and was not the only residuary beneficiary of the Estate.

Sincerely,

Lester J. Tanner

Enc:

**EXHIBIT "R"**

**LESTER J. TANNER, ESQ.**
175 Huguenot St. P204
New Rochelle, NY 10801
Tel: (914) 385-0244
Fax: (914) 654-3068

June 7, 2012

**By Email and Fed Ex to:**
Dean Sperling, Esq.

**By email to:**
Cindy Marcus
Richard Marcus
Elizabeth Marcus

I have closed my file (and the Estate Bank Account) as the Executor of the Estate of Harold Marcus in view of the emails exchanged with Cindy Marcus and Richard Marcus on May 31, 2012. Enclosed is my bill for $3,267.97, an Accounting of funds received and disbursed by the Estate, a Chronology of efforts to recover unclaimed funds and (in the case of Dean Sperling, Esq.) copies of relevant documentation.

Harold was a college classmate, client, close friend and confidante of mine for many years and he entrusted me to act as his Executor and resolve any conflict between his three children and Liz Atwood, his second wife and widow. This was achieved in 1994 and I was unaware until recently that there was any discord between Cindy and her siblings.

Cindy was the one who discovered the existence of unclaimed funds belonging to her father in New York State and an additional asset which the Keene Organization Inc. of Wayne, Pa. informed her was about $60,000. Keene would not reveal the source of those funds unless the Estate paid Keene a 35% fee for facilitating the recovery. Cindy refused to pay that fee and ultimately discovered the place where that asset could be claimed. I furnished the Letter of Instructions (copy to Dean Sperling) to recover those funds.

Harold would not wish to see his children fighting over the money that was incorrectly paid to Cindy instead of the Estate. I am recommending to each of you that this matter be resolved as follows:

| | | |
|---|---|---|
| Amount Received............................................... | | $59,181.97 |
| Pay to Lester J. Tanner (fee) | $ 3,267.97 | |
| Pay to Cindy for recovery services | 13,914.00 | (17,181.97) |
| | | |
| Pay $14,000 to each of the 3 children | | $ 42,000.00 |

To Cindy I say that there is the fair chance that you may have forfeited your right to share in the recovery. My recommendation is fair to everyone in view of Cindy's saving the 35% fee requested by Keene.

To Richard and Elizabeth I say that you should address Cindy's inquiries about her mother's Estate by informing her of the contents of Harriet's Will if Cindy does not already have a copy; and by referring her to the Owner/Manager of the New Rochelle Tennis Facility (is that Miles Stuchin?).

Whatever you children decide to do I am done with the matter. My file is closed and I wish you all good health and a happy life.

Sincerely,

Lester J. Tanner

Enc:

**Fed Ex with docs to:**
Dean Sperling, Esq.
201 East Sandpointe Ave. Suite 220
Santa Ana, CA 92707
Tel: (714) 438-8090

## Estate of Harold Marcus

## Accounting

---

| | | |
|---|---|---|
| 1/14/11 | Received from Comptroller of the State of New York for Unclaimed Funds of Harold Marcus MD ................ | $17,600.83 |
| 1/19/11 | Disbursed $5,800 to each of the children and received letters of indemnification from each one........... | ( 17,400.00)<br>200.83 |
| 1/14/11-6-1/12 | Checkbook and opening fees plus monthly maintenance fees ($14) of Bank of America in the period................................. | (278.00) |

Net Deficiency..................................................................... (77.17)

Paid by Lester J. Tanner........................................................ 77.17

Account Closed 6/1/12............................................................ -0-

NOTE:        Recovered and paid to Cindy Marcus in
             contravention of Letter of Instructions......................... $59,181.97

**LESTER J. TANNER**
**Attorney at Law**
**175 Huguenot St. P204**
**New Rochelle, NY 10801**
**Tel: (914) 385-0244**
**Fax: (914) 654-3068**

June 7, 2012

<u>Email</u>
Cindy Marcus
Richard Marcus
Elizabeth Marcus
Estate of Harold Marcus

---

For:   Professional Services rendered to the
       Estate of Harold Marcus and to the three
       residuary heirs of his estate from August
       8, 2010 to June 7, 2012 in connection with
       the recovery of $76,782.80 of unclaimed
       funds belonging to the late Harold Marcus
       and his Estate-----------------------------------------------          $3,125.00


Disbursements:        Westchester County Surrogate Court   $ 18.00
                      Bank of America (net)                  77.17
                      FedEx & Misc                           47.80        142.97

Total                                                                    $3,267.97

---

**Estate of Harold Marcus**
**Chronology**

August 8 -
December 28, 2010

Received email from Cindy Marcus about unclaimed funds held by York State Comptroller for Harold Marcus and requesting that I sign the form since the Comptroller needs the signature of the Executor of the Estate. I renewed my Letters Testamentary and received a new federal ID number.

December 29, 2010

Letter from Lester J. Tanner to Cindy, Richard and Elizabeth Marcus informing them that I received $17,600.83 for the Estate from the Comptroller and I would open an Estate Bank Account. . Also that Cindy had received a letter from Keene that there was an unclaimed asset valued at approximately $60,000 and Keene wanted an Agreement to receive 35% as its fee before revealing the location of those unclaimed funds.

January 4, 2011

Executor opened an Estate Checking Account at Bank of America and deposited $17,600.73 in the Account.

January 4-10, 2011

Received individual indemnification from Cindy, Richard and Elizabeth for claims against the Executor and the Estate for all claims, costs and expenses resulting from distributions of $5,800 to each of them.

January 19, 2011

Signed and mailed check numbers 101-103 for $5,800 each to Cindy, Richard and Elizabeth leaving $200.83 in the Estate Bank Account.

January 20, 2011 to
November 16, 2011

Efforts to obtain the $60,000 from Keene were unsuccessful because of the impasse over the 35% payment demanded by Keene. But when Keene was being liquidated, Cindy found Peg Moulder of Crederian Fund Services, LLC. who informed her that the amount unclaimed, $59,800,had been in the Reserve Fund but was incorrectly paid to a Harold Marcus in California. Cindy asked me to communicate with Peg Moulder to assert the claim to those funds by the Estate.

November 16, 2011

I filed the Estate's claim to those funds with Crederian as Executor of the Estate requesting that the payments be made to "The Estate of Harold Marcus" and requesting that I be informed of progress in recovering the $59,800.

| | |
|---|---|
| May 24, 2012 | Not having heard from Crederian, I wrote to her, asking when the refund would be obtained. Peg Moulder replied that she had wired the refund to Cindy Marcus. |
| May 31, 2012 | Wrote to Crederian requesting more information and was informed that the refund was for $59,181.97 and was wired by Crederian on January 20, 2012 into the account of Cynthia Marcus at Santa Barbara Bank and Trust, a Division of Pacific Capital Bank, Account Number 010271271 at 1483 E. Valley Road, Montecito, CA 93108. |
| | Email communications with Cindy and Richard concerning the funds received by Cindy. |
| June 6, 2012 | Received a telephone call from Dean Sperling, Esq. an attorney in Santa Ana, California requesting information about the matter, stating he was authorized by Richard to act as his attorney in this matter. |
| June 7, 2012 | Sent email to children and Mr. Sperling with my bill and papers closing this file, and by FedEx to Mr. Sperling with documentary detail. |

FORM B104 (08/07)                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| **PLAINTIFFS** Richard Marcus & Elizabeth Marcus | **DEFENDANTS** Cynthia Joan Marcus |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Dean P. Sperling, Esq. 250 Pacifica, Suite 250 Irvine, California  92618 | **ATTORNEYS** (If Known) Lindsey B. Green, Esq. 5743 Corsa Avenue, Suite 111 Westlake Village, California 91362 |
|---|---|

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin | ☒ Debtor  ☐ U.S. Trustee/Bankruptcy Admin |
| ☒ Creditor  ☐ Other | ☐ Creditor  ☐ Other |
| ☐ Trustee | ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to Determine Dischargeability of Debt (creditors not listed in bankruptcy schedules)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property – §542 turnover of property
☐ 12-Recovery of money/property – §547 preference
☐ 13-Recovery of money/property – §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability – §523(a)(5), domestic support
☒ 68-Dischargeability – §523(a)(6), willful and malicious injury
☐ 63-Dischargeability – §523(a)(8), student loan
☐ 64-Dischargeability – §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 78,909.20 |

Other Relief Sought

CCD-B104

FORM B104 (08/07), page 2                                                   2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Cynthia Joan Marcus | | BANKRUPTCY CASE NO.<br>12:bk-12397-RR |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISIONAL OFFICE<br>Santa Barbara | NAME OF JUDGE<br>Robin Riblet |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>November 11, 2013 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Dean P. Sperling | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.