FILED & ENTERED

AUG 09 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY RUST     DEPUTY CLERK

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 9:12-bk-12397-PC |
| CYNTHIA JOAN MARCUS, | Chapter 7 |
| Debtor. | Adversary No. 9:13-ap-01190-PC |
| RICHARD MARCUS and ELIZABETH MARCUS, | **MEMORANDUM DECISION** |
| Plaintiffs, | |
| v. | |
| CYNTHIA JOAN MARCUS, | Date: August 4, 2016<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom # 201<br>1415 State Street<br>Santa Barbara, CA 93101 |
| Defendant. | |

Before the court is motion of Defendant, Cynthia Joan Marcus ("Cynthia") for relief from this court's Memorandum Decision and Judgment entered in this adversary proceeding on May 16, 2016. Plaintiffs, Richard Marcus ("Richard") and Elizabeth Marcus ("Elizabeth") oppose the motion. Having considered motion, opposition, reply and argument of counsel, the court will

1

deny Cynthia's motion based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a), as incorporated into FRBP 7052.[1]

## I. STATEMENT OF FACTS

After a trial on the merits, the court entered a Memorandum Decision [Dkt. # 126] and Judgment [Dkt. # 127] in the above referenced adversary proceeding on May 16, 2016. The Judgment against Cynthia (1) awarded Richard the sum of $39,454.60, with interest at the federal rate after entry of judgment until paid; (2) awarded Elizabeth the sum of $39,454.60, with interest at the federal rate after entry of judgment until paid; and (3) adjudicated such debts as nondischargeable under 11 U.S.C. §§ 523(a)(4) and (a)(6).

On May 26, 2016, Cynthia filed her Motion for Relief from Judgment (FRCP 60; FRBP 9024) ("Motion"). Richard and Elizabeth filed written opposition to the Motion on July 18, 2016, to which Cynthia replied on July 28, 2016. After a hearing on August 4, 2016, the matter was taken under submission.

## II. DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

A. <u>Reconsideration Under Rule 59(e)</u>.

A motion to alter or amend a judgment under F.R.Civ.P. 59(e), as incorporated into FRBP 9023, must be filed no later than 14 days after entry of judgment. FRBP 9023. When reconsideration is sought within 14 days after entry of the judgment, the motion is treated under Rule 59(e) rather than Rule 60. <u>See, e.g.</u>, <u>Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.</u>, 248 F.3d 892, 899 (9th Cir. 2001) ("[A] 'motion for reconsideration' is treated as a

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330. "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) if it is filed within [28] days of entry of judgment." (citation omitted)). "Otherwise, it is treated as a Rule 60(b) motion for relief from judgment or order." Id. In this case, Cynthia's Motion was filed on May 26, 2016 -- 10 days after entry of the Judgment on May 16, 2016. Therefore, the court's analysis must begin under Rule 59(e).

Reconsideration under FRCP 59(e) is "an extraordinary remedy which should be used sparingly." Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) (citation omitted); see Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (""[T]he rule offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" (citation omitted)). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Reconsideration may also be granted "as necessary to prevent manifest injustice." Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

The Ninth Circuit has emphasized that "[a] Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona Enters., 229 F.3d at 890. Nor is Rule 59 is "a vehicle for re-litigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998); see Phillips v. C.R. Bard, Inc., 290 F.R.D. 615, 670 (D. Nev. 2013) ("[M]otions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." (citation omitted)). "Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation, 331 F.3d at 1046.

Cynthia does not allege newly discovered evidence or an intervening change in controlling law. Nor does Cynthia allege that the court's ruling must be set aside to prevent manifest injustice. At oral argument, Cynthia's counsel pointed to the following three fact

3

findings made by the court in its Memorandum Decision which, according to Cynthia, were essential to the court's Judgment and clearly erroneous based on the evidence presented at trial:

1. There is no credible evidence that either Elizabeth or Richard sought to "cut" Cynthia out of her share of the trust estate. In fact, it became apparent at trial that the reason Cynthia's spendthrift trust had not received a distribution from the Trust was Beaudry's failure to execute an acceptance of her appointment as trustee of Cynthia's spendthrift trust. The Trust made a distribution to Cynthia's spendthrift trust once Beaudry executed an Acceptance of Appointment of Trustee on March 15, 2016, and obtained a tax identification number for the trust from the IRS.[2]

2. [T]here is no evidence that either Elizabeth or Richard on or before January 20, 2012, were seeking to "cut" Cynthia out of their mother's estate.[3]

3. No reasonable person receiving the Subject Funds under the same or similar circumstances would have believed that the Funds were hers to keep.[4]

"A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

Cynthia asserts that "[i]t was not necessary for Cynthia to infer that her siblings were seeking to totally cut her out of her spendthrift trust's share of distribution from her mother's estate."[5] Cynthia reasons that she "would be sufficiently justified to be deemed operating under 'color of right' pursuant to a good faith, reasonable inference that her trust was wrongfully being discriminated against with respect to the distribution of its share of the estate; and there was dominant evidence to support such an inference."[6] Cynthia further asserts that "Elizabeth had breached her fiduciary duty by discriminating against Cynthia's spendthrift trust in distributing

---

[2] Memorandum Decision, 16:3-9.

[3] Id. at 14:15-16.

[4] Id. at 18:14-16.

[5] Motion, 3:12-13 (emphasis added).

[6] Id. at 3:13-17 (emphasis added).

$50,000 to Elizabeth as a 50% trust beneficiary, and distributing nothing to Cynthia's spendthrift trust as a 30% trust beneficiary[;]" and because of "Elizabeth's breach of fiduciary duty, Cynthia had an 'excuse or color of right' to use self-help to appropriate the Funds."[7] Finally, Cynthia attacks the court's conclusion based on Cynthia's testimony and Exhibits 23 and 24 which were admitted into evidence at trial that "the reason Cynthia's spendthrift trust had not received a distribution from the Trust was Beaudry's failure to execute an acceptance of her appointment as trustee of Cynthia's spendthrift trust" and to obtain "a tax identification number for the trust from the IRS."[8] Cynthia claims that the "finding is not supported by substantial evidence but is purely a speculative rather than reasonable inference" in the absence of Elizabeth's testimony at trial.[9]

In its Memorandum Decision, the court made the following findings with respect to Cynthia's receipt and retention of the Subject Funds, which Cynthia does not dispute in her Motion:

> Cynthia knew that the Subject Funds belonged to the Estate of Harold Marcus. She knew that she had to disclose the Subject Funds to Tanner and that the Subject Funds needed to be paid to Tanner, as Executor of the Estate of Harold Marcus, to be administered as an asset of the estate. She had previously discovered $17,000 belonging to the Estate of Harold Marcus. She recovered and immediately turned those funds over to Tanner. Cynthia knew that Tanner (1) had made demand on Crederian for payment of the Subject Funds to the estate; (2) had provided Crederian with all documentation and instructions necessary for a wire transfer of the Subject Funds to the estate's account at Bank of America in New Rochelle, New York; and (3) was expecting a wire transfer of the Subject Funds from Crederian after the email exchange on November 16, 2011. Inexplicably, Crederian wired the Subject Funds to Cynthia, not Tanner, on January 20, 2012.
>
> There is no evidence of communications between Cynthia and Crederian between November 16, 2011 and January 20, 2012, other than Cynthia's testimony that Moulder telephoned her, stated that she had <u>her</u> money, and requested wiring instructions to Cynthia's personal bank account. Cynthia denies contacting

---

[7] Id. at 5:17-22.

[8] Memorandum Decision, 16:4-9.

[9] Motion, at 4:17-18.

5

> Moulder or requesting the payment of any portion of the Subject Funds directly to her. When she was contacted by Moulder, however, Cynthia did not tell Moulder to wire the Subject Funds to Tanner as directed by Tanner in the email exchange on November 16, 2011, nor did she question at all why Moulder intended to wire the Subject Funds to her, not Tanner, given the prior email exchange. Cynthia received the funds directly from Crederian without objection by wire transfer into her personal account at Santa Barbara Bank & Trust in Montecito, California. Cynthia not only kept the Subject Funds for her own use and benefit, but concealed receipt of the Subject Funds from Tanner and her siblings for a period of four months. It was only after Tanner contacted Crederian on May 24, 2012, regarding the status of the funds that Cynthia finally disclosed to Tanner that she had received the Subject Funds four months earlier. She then refused to turnover the Subject Funds to the estate.
>
> Cynthia admits that she appropriated the Subject Funds. She admits that she received the Subject Funds from Crederian on January 20, 2012, and, "rather than transmitting the fund to executor Tanner, [she] appropriated the [Subject Funds] for her own use and benefit, keeping her own $20,000 share, as well as the $40,000 that should have been disbursed equally to Elizabeth and Richard."[10]

The court also determined that "[n]o reasonable person receiving the Subject Funds under the same or similar circumstances would have believed that the funds were hers to keep."[11] Cynthia does not contest the court's conclusion.[12]

The issue of Cynthia's excuse and color of right in appropriating the Subject Funds was litigated extensively at trial. In its Memorandum Decision, the court observed that Cynthia's reasons for keeping the funds had varied from May 24, 2012 to the time of trial:

> After the adversary proceeding was commenced, Cynthia claimed that she needed the money because she was in dire financial straits in January 2012 due to mounting medical and dental bills attributable to mercury poisoning caused by faulty dental work. Shortly before trial, Cynthia claimed that she kept the Subject Funds following a discussion with legal counsel after receiving the money. Neither of these reasons was mentioned in Cynthia's email to Tanner on May 24, 2012, in which she stated as the <u>sole reason</u> for keeping the Subject Funds, the following:

---

[10] Memorandum Decision, at 12:5 – 13:10.

[11] Id. at 18:14-16.

[12] Motion, 2:10-12.

6

> I still have not received the funds from my sister from my mother's estate and both my sister and brother are getting the return from the Palmer tennis club and they have cut me out of that so we are not quite even yet.[13]

In her trial brief, Cynthia stated as a <u>further reason</u> for keeping the money that "[i]n September 2011, Elizabeth as Trustee of Harriet's Trust made a preliminary distribution to herself of $50,000, and Elizabeth was restricting Cynthia's access to trust information."[14]  At trial, Cynthia testified on direct and was cross-examined regarding this issue.  Ultimately, the court concluded that "[w]hatever the reason, Cynthia's retention of the Subject Funds was not justified."[15]

Cynthia now points to an alleged breach by Elizabeth of her fiduciary duties as Trustee of the Harriet Marcus Revocable Trust dated March 23, 2010, as yet an additional excuse for her appropriation of the Subject Funds ostensibly under "color of right."  Cynthia had the opportunity to raise this issue prior to trial, but it was not disclosed in either the parties' Joint Pre-Trial Stipulation or the Defendants' Trial Brief.  A Rule 59(e) motion may not be used to raise an argument for the first time when it could have been made at trial.  <u>Kona Enters.</u>, 229 F.3d at 890.  Rule 59 is not "a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  <u>Sequa Corp.</u>, 156 F.3d at 144.

Had the theory been properly raised by Cynthia at trial, the court's findings would not have been different because there was no evidence adduced at trial, other than Cynthia's testimony, to support the conclusion that either Elizabeth or Richard on or before January 20, 2012, were seeking to deprive her of a share of her mother's estate.  Based on the evidence presented, the court determined:

> First, Cynthia was not entitled to the Subject Funds.  She did not have a present right to any portion of the Subject Funds on January 20, 2012.  She had, at best, a mere expectancy that she would receive from Tanner, as a residuary beneficiary

---

[13] <u>Memorandum Decision</u>, at 14:1-9.

[14] Defendant's Trial Brief, 12:3-5

[15] <u>Memorandum Decision</u>, at 14:10.

7

of the Estate of Harold Marcus, a distribution of one-third of the Subject Funds from the estate after costs of administration.

Second, there is no evidence that either Elizabeth or Richard on or before January 20, 2012, were seeking to "cut" Cynthia out of their mother's estate. Cynthia testified that "Richard was very hostile and abusive" and that she was convinced Richard was working with Elizabeth, as executrix of the Harriet Marcus estate, to deprive her of distributions from her mother's estate. She testified that "he would give advice to Liz and Liz would listen to him; and when Liz stopped talking to me, I just felt like he was behind it." She further testified that she kept the Subject Funds because "they had control over my mother's money – over $200,000 that was supposed to go to my benefit and they could have reimbursed themselves out of that; and had they given me that money, I wouldn't have needed this $59,000 because I would have had it but they kept it from me and I needed the money."

The Subject Funds were no more Cynthia's to keep from the Estate of Harold Marcus than the $200,000 anticipated distribution from Cynthia's mother's estate into her spendthrift trust was hers to give away. Harriet Marcus, the mother of Cynthia, Richard and Elizabeth, died in October 2010. Elizabeth was appointed as executrix under the Last Will and Testament of Harriet Marcus dated March 23, 2010. In conjunction with her will, Harriet executed the Harriet Marcus Revocable Trust ("Trust") dated March 23, 2010, under the terms of which Elizabeth, as successor trustee, was instructed to distribute the balance of the trust estate upon the death of Harriet Marcus, as follows: (a) 30% in trust for the benefit of Cynthia; (b) 20% in trust for the benefit of Richard; and (c) 50% in trust for the benefit of Elizabeth. The Trust named Sally Beaudry ("Beaudry") as trustee of the spendthrift trust created specifically for Cynthia. Cynthia testified that Beaudry was a friend she had known for over 20 years. Beaudry was also an attorney.

Prior to January 2012, Cynthia learned that Elizabeth, as executrix and trustee of the Trust, had made a $50,000 distribution to the spendthrift trust created for Elizabeth under the Trust. On January 20, 2012, Cynthia knew only that she had not received a distribution from the Trust. She also had no basis in fact to believe that a distribution had been made to Richard's spendthrift trust.

Cynthia's unfounded speculation regarding secret distributions to Richard and Elizabeth from her mother's estate was exacerbated by the fact that Cynthia had stopped talking to both Richard and Elizabeth by January 20, 2012. It was undisputed that Richard and Cynthia had not spoken to each other in over ten years. Elizabeth and Cynthia communicated with one another prior to Harriet's death, and continued to do so after Elizabeth was appointed as executrix of their mother's estate. At some point, however, Elizabeth stopped returning Cynthia's phone calls after having received advice from Cynthia on estate administration,

  such as tax and real estate sales issues.  Cynthia then received a letter from counsel for the Estate of Harriet Marcus advising her to direct to the firm all future communications regarding the administration of the estate.  Notwithstanding the letter, Elizabeth continued to communicate with Cynthia on other matters sending her emails on holidays, such as Christmas.  Cynthia then ceased further communications with Elizabeth, testifying that she found the emails from Elizabeth "hurtful."[16]

Based on the foregoing, the court does not believe that its rejection of Cynthia's contention that she appropriated the Subject Funds under "color of right" was either illogical, implausible, or without support in the record.

  With respect to Exhibits 23 and 24, the court notes that the parties agreed in the Joint Pre-Trial Stipulation to the fact that Cynthia "did not and still has not form [sic] the trust as required by the provisions of Article Third of the trust document of Harriet Marcus which states: "Any property set apart for Cynthia Marcus or Richard Marcus (hereinafter called 'beneficiary') shall be held by the trustees IN TRUST, to pay so much of the net income and so much of the principal to the beneficiary whether the whole or a lesser amount, as the trustee (other than the beneficiary) in his or her sole discretion determines appropriate."[17]  The parties also listed as a disputed issue of fact whether Cynthia, "had she established a trust as required by the provisions of Article Third of the trust document of Harriet Marcus then [Cynthia], would have received her 30% share of the said trust estate in July 2012 when Plaintiff Elizabeth Marcus and the trust of Plaintiff, Richard Marcus, each received their share of such trust estate."[18]

  According to the evidence, it was undisputed at trial that Cynthia had not formed the spendthrift trust in her name that was required to receive a distribution from the Harriet Marcus Revocable Trust.[19]  A distribution was made to Cynthia's spendthrift trust after Beaudry executed an Acceptance of Appointment as Trustee on March 15, 2016, and Cynthia's

---

[16] Id. at 14:11 – 16:2.

[17] Joint Pre-Trial Stipulation, 5:6-12.

[18] Id. at 6:16-20.

[19] Id. at 5:6-12.

9

spendthrift trust obtained a federal tax identification number. In light of the foregoing, the court's finding that "the reason Cynthia's spendthrift trust had not received a distribution from the Trust was Beaudry's failure to execute an acceptance of her appointment as trustee of Cynthia's spendthrift trust" and to obtain "a federal tax identification number" was neither illogical, implausible, or without support in the record. The court made no finding regarding whether Cynthia's spendthrift trust would have been fully funded had she properly set up the trust in July 2012 nor does the court believe that such a finding was essential to the judgment entered in the case.

Next, Cynthia claims that she did not intend to permanently deprive either Elizabeth or Richard of their share of the Subject Funds, but was "merely trying to use self-help as against Elizabeth's breach of her fiduciary duty in discriminating against Cynthia's spendthrift trust with respect to the unequal distributions of Harriet's trust estate."[20] Cynthia had the opportunity at trial to address the issue of Elizabeth's alleged breach of fiduciary duty and discrimination with respect to trust distributions. Because she did not do so, Cynthia cannot argue this new theory on reconsideration. More importantly, Cynthia admitted on cross-examination that she did not communicate to either Elizabeth or Richard, before or after appropriating the Subject Funds. Cynthia never told either Elizabeth or Richard that she merely intended to hold the Subject Funds for the purpose of securing a future distribution to her spendthrift trust and ultimately, that the Subject Funds would be offset from such future distribution. On the contrary, Cynthia seized the funds and remained silent until she was caught by Tanner months later. As previously stated, Cynthia does not contest the court's finding that "[n]o reasonable person receiving the Subject Funds under the same or similar circumstances would have believed that the funds were hers to keep."[21] The evidence supports the court's conclusion that "Cynthia's appropriation of the Subject Funds constituted the felonious taking of personal property owned by the Estate of Harold Marcus," that her "actions were wrongful and amounted to fraud" and that "[s]he

---

[20] Motion, 6:17-19.

[21] See footnote # 4.

received and retained the Subject Funds with the intent to convert and misappropriate such property to her own use and benefit."[22]

B. Rule 60(b)(3) & (6).

Finally, Cynthia argues that counsel for Elizabeth and Richard represented during final argument at trial that Cynthia's spendthrift trust would have received a full distribution had Beaudry previously delivered to Elizabeth Exhibits 23 and 24, that such statement was "specious" and "unsupported by substantial evidence," and constituted a "misrepresentation" for which relief from the Judgment is appropriate under Rule 60(b)(3).[23]

F.R.Civ.P. 60(b)(3) requires the moving party to "prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." Casey v. Albertson's Inc, 362 F.3d 1254, 1260 (9th Cir. 2004) (citing De Saracho v. Custom Food Machinery, Inc., 206 F.3d 874, 880 (9th Cir.2000)). "Federal Rule of Civil Procedure 60(b)(3) require[s] that fraud ... not be discoverable by due diligence before or during the proceedings." Id. (citing Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union, 952 F.2d 1144, 1148 (9th Cir.1991)).

The Motion fails to satisfy the standard under FRCP 60(b)(3). As the opposition correctly notes:

> There is no showing, nor can there be, that Plaintiffs and/or their counsel made any misrepresentation or committed any fraud or misconduct that prevented Defendant from fully and fairly presenting any defense. Further, the arguments made to the Court were made right in front of Defendant's counsel during trial. Defendant cannot show that the claimed misconduct was not discoverable by due diligence during the proceedings.[24]

---

[22] Memorandum Decision, 18:9-12.

[23] Motion, 7:4-10.

[24] Opposition of Plaintiffs, Richard Marcus & Elizabeth Marcus to Motion of Defendant, Cynthia Joan Marcus for Relief from Judgment Pursuant to FRCP 60 and FRBP 9024 ("Opposition"), 11:20-25.

Even assuming the statement was made, the court gives no weight to final argument of counsel in making its findings. The court's findings are based on evidence in the record; and as previously stated, the court made no finding regarding whether Cynthia's spendthrift trust would have been fully funded had she properly set up the trust in July 2012 nor does the court believe that such a finding was essential to the judgment entered in the case. Accordingly, Cynthia's request for relief from the Judgment under Rule 60(b)(3) is denied.

Although not specifically raised in the motion,[25] Cynthia also seeks relief from the Judgment under the "catch-all provision" of Rule 60(b)(6), which authorizes the court to grant relief from a final judgment for "any other reason that justifies relief." F.R.Civ.P. 60(b)(6). "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice." U.S. v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993). "The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." Id.

Rule 60(b)(6) is inapplicable to the facts of this case. Cynthia sought relief from the Judgment within 10 days after it was entered in the above referenced adversary proceeding. No circumstances exist that prevented her from taking timely action to seek relief from the Judgment. The court properly considered Cynthia's requested relief from the Judgment under Rules 59(e) and 60(b)(3). Having denied the requested relief under Rules 59(e) and 60(b)(3), the court will deny Cynthia's request for relief from the Judgment under Rule 60(b)(6) finding that no extraordinary circumstances existed which prevented Cynthia from taking timely action to prevent or correct the allegedly erroneous Judgment.

---

[25] Cynthia's motion refers generally to the relief available under F.R.Civ.P. 60(b)(1), (2), (3) & (6), but she did not argue any specific provision of Rule 60(b) in her motion except Rule 60(b)(3). Motion, 2:27-3:2. Cynthia essentially argued F.R.Civ.P. 60(b)(6) as grounds for relief from the Judgment for the first time in her reply. See Reply to Opposition to Motion for Relief from Judgment ("Reply"), at 3:12 – 4:13. At oral argument, Cynthia abandoned any claim for relief under F.R.Civ.P. 60(b)(1) and (2).

CONCLUSION

For the reasons stated, the court will deny Cynthia's motion.  A separate order will be entered consistent with this memorandum.

###



Date: August 9, 2016

Peter H. Carroll
United States Bankruptcy Judge